229 So.2d 83

Nathan GREENBERG

v.

Anna Shirley BURGLASS, divorced wife of
Joseph DE SALVO.

No. 49665.

Nov. 10, 1969.

Rehearing Denied Dec. 15, 1969.

James R. Mary, New Orleans, for defendant.

Gilbert P. Cohen, Gretna, for respondent.

HAMLIN, Justice:

Herein, the Court of Appeal, Fourth Circuit, affirmed the judgment of the trial court which forever enjoined, restrained, and prohibited Anna Burglass De Salvo[1] from:

"a) Entering upon the property of Nathan Greenberg situated at 848 Second Street, Gretna, Louisiana, and his residence, at 45 Smithway, Gretna, Louisiana, and:

"b) Uttering, publishing, circulating or disseminating any documents or statements, oral or written, designating and referring to petitioner, Nathan Greenberg, as 'a crook', 'a crooked lawyer', and/or 'a slimy kike', or words of similar import or meaning." (Emphasis ours.)

The Court of Appeal amended the trial court's judgment by increasing the award of damages to plaintiff from $1,500.00 to $4,500.00. 216 So.2d 638.

In this libel and slander suit, which sought injunctive relief and damages, we granted certiorari limited to Assignment of Errors No. 1, "That the Court of Appeal erred in ignoring completely the fact

that, in affirming the judgment of the trial court it was sanctioning an injunction against future exercise of free speech." In all other respects the application was denied; we found no error of law in Assignment of Errors Nos. 2, 3 and 4. 253 La. 635, 219 So.2d 173.

Our limitation makes it unnecessary to review the facts preceding the institution of suit. However, the following findings of the trial court, adopted by the Court of Appeal, will assist in an appreciation of the matter:

"In the opinion of the Court the defendant's statements were motivated by revenge and vindictiveness with the sole intent to embarrass, insult and humiliate the plaintiff with the hope that it could cause the loss of his reputation and ruin his professional practice. * * *

"Urged as her sole defense is the truth of her statements, that is, the plaintiff is in truth and fact a crook and a crooked lawyer. The record does not sustain the defendant's contention. * * *

"The Court is convinced that the defendant knew her charges of dishonesty were baseless and without foundation in fact. * * *

"The Court therefore concludes that the defendant did knowingly, maliciously, and falsely make statements calculated to

[1]. Defendant appeared before the Court of Appeal as Anna S. Burglass Dunker; she applied to this Court for certiorari as Anna Shirley Burglass Dunker.

insult, embarrass and humiliate the plaintiff. They were uttered to intentionally hold Mr. Greenberg in disrepute by discrediting his character and destroying his professional reputation. They were calculated to deprive him of his good name and standing in his profession and to cause him a loss of income. The plaintiff is entitled to injunctive relief to protect him against further utterances of these defamatory statements by the defendant and to secure for him his constitutional right of privacy and to guarantee the practice of his profession without being subjected to further harassment, insults, and slanderous remarks by Mrs. De Salvo." [2]

Defendant-relator (hereinafter referred to as Mrs. Dunker) contends: (1) An injunction will not lie to restrain future utterance or publication of slander or libel; (2) The requirement of a showing of actual malice in an action for damages by a person in public life is applicable to a wide coverage of persons whose activities are so directly involved in public affairs that the public good demands a freedom of discussion.

Plaintiff argues: (1) After a plaintiff has, by a judgment at law, established the fact that certain published statements are libelous, he may on proper showing, have an injunction to restrain any further publication of the same or similar statements; (2) An injunction will be granted to protect the right of privacy or the right to be let alone.

The question presented for our determination is whether a permanent injunction is proper as to paragraph b) of the judgment, supra, in a matter of this nature.

"Injunction is an equitable remedy. Since 1825, the procedural codes of this state have specifically provided for it. See C.P. (1825) Art. 296; C.P. (1870) Art. 296; and LSA–C.C.P. (1960) Art. 3601.

"Although equitable remedies in the past have sometimes been denied in terms of lack of jurisdiction, the jurisdictional rationale is technically inaccurate. Louisiana district courts have jurisdiction of all civil matters. La.Const. Art. VII, § 35. They are courts of general trial jurisdiction and administer both law and equity. LSA–C.C. Art. 21. Strictly speaking, therefore, a district court always has jurisdiction in a civil action to grant an equitable remedy. The court possesses the 'legal power and authority'

---

**2.** In New York Times Company v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed. 2d 686, involving a public official, the United States Supreme Court, 84 S.Ct. 726 (1964), said: "The constitutional guarantees require, we think, a federal

rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reck-

to hear the action and grant the relief to which the parties are entitled. See LSA–C.C.P. Art. 1. When an equitable remedy is sought from a district court in a civil action, the true question is not one of jurisdiction, but whether or not the equitable remedy is warranted under the circumstances." West v. Winnsboro, 252 La. 605, 211 So.2d 665, 669.

LSA–C.C.P. Art. 3601 provides:

"An injunction shall issue in cases where irreparable injury, loss, or damage may otherwise result to the applicant, or in other cases specifically provided by law.

" * * *"

"Except when otherwise specially authorized by law, the Article requires a threat of irreparable injury. * * *" West v. Winnsboro, supra.

"Irreparable injury justifying an injunction is that which can not be adequately compensated in damages, or for which damages can not be compensable in money. * * *" Pennington v. Drews, 209 La. 1, 24 So.2d 156, 163. See, City of Lake Charles v. Lake Charles Ry., Light & Waterworks Co., 144 La. 217, 80 So. 260; Amacker v. Amacker, La. App., 146 So.2d 672; Monochem, Inc. v. East Ascension Telephone Company, La. App., 195 So.2d 748; 250 La. 889, 199 So.2d 912; Beneficial Finance Co. of Monroe v. Aldridge, La.App., 200 So.2d 681; 251 La. 220, 203 So.2d 556. Cf. Vanguard Homes, Inc. v. Home Builders Association, La.App., 219 So.2d 567.

▃▃▃ The writ of injunction, being a harsh, drastic, and extraordinary remedy, should issue only where the party seeking same is threatened with irreparable loss or injury without adequate remedy at law. Rapides Dairy Dealers' Co-op Ass'n v. Mathews, La.App., 158 So. 247. See, Chapital v. Walker, La.App., 30 So.2d 150; Amacker v. Amacker, La.App., 146 So.2d 672. "Although courts of chancery [Equity] may enjoin other types of wrongful acts, the general rule is that they cannot restrain an alleged libel or slander in the absence of some other independent ground for the invocation of equitable jurisdiction regardless of whether the defamation is personal or relates to one's property. The reason for the rule is threefold. 1. There is an adequate legal remedy, either by an action for damages or by criminal prosecution. 2. Equity jurisdiction is traditionally limited to the protection of property rights. 3. Injunctive relief inhibits the constitutional guarantees of freedom of speech and press and the right to trial by jury on the question of truth or falsity of the alleged libel." Murphy v. Daytona Beach Humane Society, Inc. (Fla.App., 1965), 176 So.2d

less disregard of whether it was false or not. * * *" See, St. Amant v.
▃▃▃▃

Thompson, 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262.

922. " * * * Generally an injunction will not issue to restrain torts, such as defamation or harrassment, against the person. Kukatush Mining Corp. v. Securities and Exchange Com'n, 114 U.S.App.D.C. 27, 309 F.2d 647, 651, n. 2 (1962); Kessler v. General Services Administration, 236 F.Supp. 693, 698 (S.D.N.Y.), aff'd per curiam, 341 F.2d 275 (2 Cir. 1964). See generally 27 Am.Jur.2d Equity § 67 (1966); 175 A.L.R. 499, 501. There is usually an adequate remedy at law which may be pursued in seeking redress from harassment

and defamation." Alberti v. Cruise, 4 Cir., 383 F.2d 268 (1967).[3]

■ It is legion in the jurisprudence that *freedom of speech* guaranteed by Art. I, Sec. 3, La.Const. of 1921, and the First Amendment to the Constitution of the United States, is sacred and inviolable; it shall not be restrained, curtailed, nor abridged.[4] The constitutional commands are of the broadest scope and are those of a liberty-loving society. Graham v. Jones, 200 La. 137, 7 So.2d 688. It follows that Mrs. Dunker's freedom of speech will be

3. "Equity does not have jurisdiction to act for the sole purpose of restraining the publication or utterance of a libel or slander, regardless of whether the defamation is personal, or relates to a property right. Nor will a publication be enjoined merely because it is false, misleading, or amounts to nothing more than expression of opinion. The jurisdiction of equity is necessarily somewhat limited, for any attempted censorship by the court through the writ of injunction is no less objectionable than is the exercise of that function by other departments of the government; such censorship is in effect prohibited by constitutional guaranties of freedom of speech and of the press, and by the constitutional right of trial by jury. The insolvency of the wrongdoer in such cases is not regarded as sufficient of itself to authorize such interference. Moreover, the general rule denying the right of the judiciary to enjoin a libel has been applied even though the libel tended to interfere with the administration of justice and to deprive an accused person of a fair trial. * * *

"There are a few exceptions to the rule prohibiting an injunction against a libel or slander. For example, an injunction may be granted where the false statements are part of a conspiracy to injure, or where there is intimidation or

coercion. * * * After a plaintiff has, by a judgment at law, established the fact that certain published statements are libelous, he may, on a proper showing, have an injunction to restrain any further publication of the same or similar statements. * * *" 42 Am.Jur.2d Injunctions, Sec. 135, pp. 891–892. See, 43 C.J.S. Injunctions § 135, pp. 680–681.

"Courts cannot determine the rights of parties in advance of an actual existing controversy concerning them, and the power to grant injunctive relief is never exercised to allay mere apprehension of injury, or against something merely feared as liable to occur at some indefinite time in the future. The injury must be real, not imaginary. It must appear to the satisfaction of the court that the apprehension is well grounded, and that there is a reasonable probability that a real injury, for which there is no adequate remedy at law, will occur if the injunction is not granted. * * *" 42 Am.Jur.2d Injunctions, Sec. 31, p. 767.

4. "Furthermore, the right to speak freely, as guaranteed by the constitution, is the right to speak for one's self or as the duly authorized agent of another." Arkansas Oak Flooring Co. v. United Mine Workers of America, 227 La. 1109, 81 So.2d 413, 423.

curtailed if she is prohibited permanently from making the utterances herein enjoined.

Despite the constitutional freedom allowed with respect to free speech, an individual can be libeled;[5] and, his libelant, who has unconstitutionally used the right of freedom of speech, must respond in damages or in exceptional cases be restrained from future libel. "It is clearly established by the large majority of the cases that equity will not grant an injunction restraining the publication of matter defaming the plaintiff personally, as distinguished from his property interests, in the absence of some independent ground for the invocation of equitable jurisdiction. The principal grounds for equity's reluctance to extend its operations to this field are the traditional limitation of equitable jurisdiction to the protection of property rights, and the fear that to grant such relief will violate the constitutional rights of freedom of speech and the press, and of trial by jury. Relief has also been denied on the ground of adequacy of the legal remedies by action for damages or by criminal prosecution." 42 Am.Jur.2d Injunctions, Sec.

136, p. 893. In the light of the law and jurisprudence cited and quoted herein, the adequacy of plaintiff's remedy at law vel non is decisive of the issues presented. "But libel and slander, like other crimes and offenses, are the subjects of punitory, and not of merely preventive, remedies. The Constitution rules over all." State ex rel. Liversey et al. v. Judge Civil District Court, 34 La.Ann. 741. See, 47 A.L.R.2d 715–733. Kenneth H. York and John A. Bauman, Remedies, Cases and Materials, American Casebook Series, Preventive Relief, pp. 523–531.

Under the ruling of the Court of Appeal, Mrs. Dunker will be subject to a judgment of contempt of court if she reiterates her prior statements. LSA–C.C.P. Art. 3611. She is confronted with guarded speech or severe consequences. On the other hand, another libel and slander suit could ensue against Mrs. Dunker if there is no injunction and she reiterates her prior statements. If successful, plaintiff would again receive damages. Plaintiff would have to bear his burden of proof, supra, and defendant would have to bear her burden of proving such defenses as she might aver. Under

---

5. "The very foundation upon which the law of libel is laid is the protection of reputation. The right to a good name and fame is as absolute and as essential to the 'pursuit of happiness' as is the right to life and liberty, characterized in our Declaration of Independence as among those 'inalienable rights with which all men, being created equal, are endowed by their Creator.' A man's reputation is recognized to be as invaluable, and is given the same dignity in the Bill of Rights that comprises Article I of our constitution, as his right to due process of law in the protection of his life, liberty, and property (Section 2); * * *." Kennedy v. Item Co., 213 La. 347, 34 So.2d 886, 890. Cf. Mulina v. Item Co., 217 La. 842, 47 So.2d 560.

such circumstances, the proof might change from that herein offered.

■ Plaintiff alleges that there is strong evidence of petitioner's propensity to continue her defamation of the respondent, which indicates that plaintiff-respondent will be forced to devote a large portion of his time, energy, and income to defending himself repeatedly from Mrs. Dunker's unjust and false attacks. Filing suit, if such were necessary, would be troublesome to plaintiff, but herein he has not proved an immediate threat of a multiplicity of suits; he has not proved that he has no legal remedy;[6] he has not proved a conspiracy or coercion. Plaintiff has not proved that Mrs. Dunker is insolvent; he has not proved that she will be unable to respond in damages if in the future they are assessed against her. Plaintiff has not proved an imposition on property rights; he has not proved confrontation with loss of property; he has not proved that he will suffer irreparable injury, loss, or damage. Under such findings, we conclude that this is not a matter for the administration of equity. Plaintiff has not made a proper showing that this matter justifies the issuance of the harsh remedy of injunction. Plaintiff has an adequate remedy at law if in the future he feels he is suffering from slander and libel allegedly committed by Mrs. Dunker.

The case of Kwass v. Kersey, 139 W.Va. 497, 81 S.E.2d 237, 47 A.L.R.2d 695, 42 Am.Jur.2d, Injunctions, Sec. 136, p. 894, Footnote 17, involved facts similar to those herein; the merits, however, had not been tried when injunction was sought. Despite this fact, we think the following from the Supreme Court of West Virginia is apposite to the present matter:

> "The property right in the practice of a profession is *ex necessitate,* an intangible property, connected with the personality of a practitioner of such profession.
>
> "  *   *   *
>
> "In the instant case, the suit is based on alleged defamation of plaintiff as a lawyer. The personality of the plaintiff and his professional standing as a lawyer cannot be separated on a rational basis. Since there is no defamation of tangible personal property alleged or shown in this record, we do not think that any question of defamation or disparagement of tangible personal property can be here considered.
>
> "  *   *   *
>
> "In accordance with the foregoing, we hold that the cause of action, if any, possessed by the plaintiff, was brought

---

6. "All courts shall be open, and every person for injury done him in his rights, lands, goods, person or reputation shall have adequate remedy by due process of law and justice administered without denial, partiality or unreasonable delay." Art. I, Sec. 6, La.Const.1921.

in the wrong forum and should have been instituted on the law side of the court." See, Gariepy v. Springer, 318 Ill.App. 523, 48 N.E.2d 572; Cf. Lawrence v. Atwood, Tex.Civ.App., 295 S.W. 2d 298.

The cases cited by plaintiff, Flint v. Hutchinson Smoke Burner Co., 110 Mo. 492, 19 S.W. 804, 16 L.R.A. 243, Wolf v. Harris, 267 Mo. 405, 184 S.W. 1139, and Ryan v. City of Warrensburg, 342 Mo. 761, 117 S.W.2d 303, are not controlling in the instant case.

Plaintiff contends that his right of privacy should be protected by injunction, and that he is entitled to "the right to be let alone." He relies on the case of Hamilton v. Lumbermen's Mutual Casualty Co., La. App., 82 So.2d 61. That case concerned the unauthorized use of an insured's name in an advertisement soliciting information relating to an automobile accident; it is not apposite to the instant matter. Because of our finding, supra, that plaintiff has an adequate remedy at law, there is no merit in this contention. Cf. Kenneth H. York and John A. Bauman, Remedies, Cases and Materials, American Casebook Series, Invasion of Privacy, pp. 541–555.

It will be noted that defendant is not contesting the issuance of the injunction insofar as she is prohibited from entering upon the property of plaintiff. (Paragraph a of the judgment, supra.) That part of the matter is not before us.

For the reasons assigned, the judgment of the Court of Appeal, Fourth Circuit, is reversed and set aside, insofar as it forever enjoined, restrained, and prohibited Mrs. Anna Shirley Burglass Dunker from uttering, publishing, circulating, or disseminating any documents or statements, oral or written, designating and referring to plaintiff, Nathan Greenberg, as "a crook," "a crooked lawyer," and/or "a slimy kike," or words of similar import or meaning. It is now ordered that the injunction be dissolved to that extent. Costs of this Court to be paid by plaintiff.

BARHAM, J., concurs in the limitation of injunctive relief but would not apply common law concepts of courts of law and equity to reach that conclusion.

SANDERS, J., recused.