301 So.2d 688 (1974)
LOUISIANA LIVESTOCK SANITARY BOARD, Plaintiff-Appellant,
v.
John PRATHER, Defendant-Appellee.
No. 4723.
Court of Appeal of Louisiana, Third Circuit.
October 16, 1974.
*689 Joel B. Dickinson, Baton Rouge, for plaintiff-appellant.
Sandoz, Sandoz & Schiff by Lawrence B. Sandoz, Jr., Opelousas, for defendant-appellee.
Before FRUGE, HOOD and DOMENGEAUX, JJ.
HOOD, Judge.
Louisiana Livestock Sanitary Board instituted this suit against John Prather to enjoin Prather from violating Regulation 5, issued by the Livestock Sanitary Board, Louisiana Department of Agriculture, relating to the sale and purchase of cattle in Louisiana. The trial judge rendered judgment for defendant, and plaintiff appealed. We affirm.
The issue presented is whether there is a reasonable probability that the acts sought to be enjoined will occur, thus entitling plaintiff to the injunctive relief which it seeks.
The pertinent parts of Regulation 5, issued by Livestock Sanitary Board, Louisiana Department of Agriculture, are contained in Section 1, Sub-section 1, of that regulation, and they provide that:
"A. It is a violation of this regulation to sell breeding type cattle, not governed by other regulations of the Livestock Sanitary Board, in Louisiana for any purpose other than immediate slaughter unless they are accompanied by a Valid 30-Day negative brucellosis test certificate...."

"B. It is a violation of this regulation to purchase cattle in Louisiana, not governed by other regulations of the Livestock Sanitary Board, for any purpose other than immediate slaughter unless they are accompanied by a Valid 30-day Negative Brucellosis Test Certificate....." (Emphasis added).
This regulation was issued and promulgated by the Livestock Sanitary Board pursuant to the provisions of LSA-R.S. 3:2223, which provides:
"The Livestock Sanitary Board may promulgate necessary rules and regulations to carry out the eradication of brucellosis, and necessary quarantine regulations to prevent the reinfection of livestock."
On September 24, 1972, defendant Prather sold to Charles M. Thompson three head of cattle for the price of $925.00. The transaction was a private sale, completed on defendant's farm. Delivery of the cattle was made to Thompson on that date, and payment of the purchase price was made to Prather the next day, September 25. Prather, however, did not deliver to Thompson a valid 30-day Negative Brucellosis Test Certificate, as required by Regulation 5 of the Livestock Sanitary Board.
At the time the sale was completed, Thompson asked Prather to furnish him with the certificate which was required by the above regulation. Prather was unable to furnish the certificate at that time, but he promised Thompson that he would send the Negative Brucellosis Test Certificate to him by mail. Sometime later, Prather mailed to Thompson a certificate of that kind, but it did not cover or relate to the animals which had been sold to Thompson on September 24. Despite Thompson's demands, Prather has never furnished him with the required certificate.
On March 17, 1973, almost six months after the sale from Prather to Thompson had been completed, the cattle were tested by Dr. Frank Carliss, a veterinarian employed by the United States Department of Agriculture, and the tests were negative as to Brucellosis. Following that test, certificates were issued to Thompson covering the three cattle which he had purchased from Prather.
The evidence shows that Prather purchased the cattle from one or two auction barns in Louisiana about two or three *690 weeks before he resold them to Thompson. When Prather purchased the animals at the auction barns, there was affixed to the back of each cow a "blue tag," indicating that that cow had been tested for Brucellosis and that the test was negative. These blue tags ordinarily were affixed to the cattle only by personnel of the Louisiana Livestock Sanitary Board. Prather testified that when he purchased the cattle he did not request and did not receive from either auction barn the Negative Brucellosis Test Certificates required by Regulation 5 of the Livestock Sanitary Board, although he knew that delivery of such certificates was required by law. He explained that certificates of that kind are seldom furnished when sales of livestock are made at auction barns, that he assumed that the cattle had been tested and that the tests were negative, since each of the cows had been marked with a "blue tag."
Harry Guilbeau, who operated auction barns in Opelousas and Baton Rouge, testified that the auction barns ordinarily furnish Brucellosis Test Certificates to buyers of cattle only when the purchaser specifically requests them, or in cases where the cattle are to be shipped in interstate commerce. He stated that very few purchasers request certificates of that type, and that certificates consequently are furnished in only one or two percent of the sales made by the barns. He explained that certificates can be issued only by veterinarians, that auction barns seldom arrange for veterinarians to attend the sales, that it is expensive and troublesome to obtain the services of such an expert every time a purchaser buys cattle at an auction sale, and that for that reason very few sales are made accompanied by these certificates.
The trial judge rejected plaintiff's demands for the following reasons: First, Prather's failure to deliver the required certificates to Thompson was caused by the failure of plaintiff's employees to provide him with certificates when he purchased his cattle. Second, it would be discriminatory to enjoin Prather from selling cattle without the required certificates, since no similar action was brought against plaintiff or Thompson. Third, an injunction against Prather would constitute a denial of equal justice, since Regulation 5 of the plaintiff board has not been enforced in like manner against all others similarly situated.
Plaintiff argues that the fact that there have been other violations of Regulation 5 of the Livestock Sanitary Board does not bar it from enforcing that regulation against defendant. It also contends that the court erred in holding that it would be discriminatory for plaintiff to enforce the regulation against Prather when it did not include Thompson as a party defendant.
We have concluded that the trial judge was correct in refusing to grant plaintiff the relief sought. We base that holding, however, solely on the ground that the evidence fails to show that there is a reasonable probability that defendant Prather will again violate the above mentioned regulations, and thus the granting of an injunction is unnecessary and unjustified.
The purpose of an injunction is not to afford a remedy for what has happened in the past, but to prevent the occurrence of acts in the future which are unlawful or injurious. The applicant for an injunction is not entitled to that type of relief unless he shows that there is a reasonable probability that the acts sought to be enjoined will occur. It is not sufficient for plaintiff to simply show that the unlawful act has been committed once by the defendant, and that plaintiff fears that it will be committed again. Simon v. Southwest Louisiana Electric Mem. Corp., 267 So.2d 757 (La.App. 3 Cir. 1972); Greenberg v. DeSalvo, 254 La. 1019, 229 So.2d 83 (1969).
We think the rule was correctly stated in Humble Oil & Refining Company v. Harang, 262 F.Supp. 39 (E.D.La.1966), as follows:
"Injunctive relief is not available where the Mover does not establish that *691 the party sought to be enjoined is likely to commit the acts sought to be enjoined...
"An injunction should be granted only where a clear need for it exists, and where there is no adequate remedy at law. It should not be issued unless a real need for it is shown, nor should it be issued merely to allay the fears of the parties."
The evidence in the instant case shows that Prather has been engaged in the cattle business for 42 years, and that he was never charged with violating a regulation of the Livestock Sanitary Board before this suit was filed. He knew that sales of cattle customarily were completed at auction barns without the delivery of Brucellosis Test Certificates. He believed, however, that each of the three cows he bought and later sold to Thompson had been subjected to such a test, because blue tags had been put on the back of each such animal indicating that it had been tested, and that the test was negative.
Prather purchased the cattle at the auction barns for the purpose of reselling them, and Thompson later bought the cattle to use them for breeding purposes. Both transactions, therefore, were for purposes other than immediate slaughter.
It is true that defendant purchased the cattle from auction barns without obtaining Brucellosis Test Certificates, and that he resold those cattle to Thompson without certificates, although he knew that certificates were required. The evidence as a whole, however, does not show an inclination on the part of Prather to violate the regulations issued by plaintiff, and he has not threatened to do so. We think the evidence fails to show a reasonable probability that defendant at any time in the future will sell or purchase livestock without complying with the regulations of the Livestock Sanitary Board. Since the evidence does not show a reasonable probability that the acts sought to be enjoined will occur, the trial court correctly refused to issue the injunction.
We find no merit to defendant's argument that it would be discriminatory to enjoin defendant from violating the regulation, simply because that regulation has not been enforced generally heretofore or because Thompson was not made a party defendant in this suit. We do not feel that plaintiff should be precluded forever from enforcing its regulations due to the fact that it has not aggressively enforced them in the past or because it has failed to enforce them as to other violators.
Although the evidence fails to show a plaintiff, it is appropriate to observe that reasonable probability that defendant hereafter will violate the regulations issued by if he again violates Regulation 5, issued by the Livestock Sanitary Board, that additional violation may be sufficient to justify the granting of the same type of injunctive relief which is sought here. We believe that every case of this kind must be decided on its own merits, and that the evidence as a whole must be considered in determining whether there is a reasonable probability that the acts sought to be enjoined will occur.
Our conclusion in this case is that the evidence fails to show a reasonable probability that the acts sought to be enjoined will be committed, and that the issuing of an injunction is unnecessary.
For these reasons, the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiff-appellant.
Affirmed.