451 So.2d 17 (1984)
ACADIAN HERITAGE REALTY, Plaintiff-Appellee,
v.
The CITY OF LAFAYETTE, Defendant-Appellant.
No. 84-35.
Court of Appeal of Louisiana, Third Circuit.
April 11, 1984.
Rehearing Denied May 7, 1984.
Writ Denied June 25, 1984.
*18 Voorhies & Labbe, Marc W. Judice, Lafayette, for defendant-appellant.
Jefferson D. Hughes, III, Walker, Ronald G. Gossen, J. Minos Simon, Domengeaux & Wright, Bob F. Wright, Joseph Koury of Koury & Koury, Kenneth W. DeJean of Fruge & DeJean, J.M. Wooderson, Lafayette, for plaintiff-appellee.
Before CUTRER, STOKER and DOUCET, JJ.
STOKER, Judge.
Before us in this appeal is a judgment dated September 10, 1981, which grants a "conditional permanent injunction" in favor of certain intervenors in this case. The injunction sets out specific guidelines to be followed by the City of Lafayette in its operation of a sanitary landfill and, in effect, makes the landfill subject to the management of the trial court. A motion to dismiss the appeal was filed by the intervenors and was referred to the merits. In this opinion, we first address the motion to dismiss which we conclude should be denied. We will then address the merits of the injunction.

FACTS
The circumstances leading up to the filing of the present appeal are somewhat lengthy and confusing, but a recitation of these circumstances is necessary to an understanding of the motion to dismiss.
Suit was originally filed by Acadian Heritage Realty (Acadian) against the City of Lafayette. Acadian sought to enjoin the City from beginning operation of a landfill in an area which it was developing into subdivisions. Acadian also sought damages for the negligent placement of the landfill. Acadian's suit for damages was dismissed on an exception of no cause of action. The dismissal of the suit was reversed on appeal by this Court in an opinion reported at 394 So.2d 855 (Acadian # 1). The trial court ultimately refused to enjoin the construction of the landfill at the instance of Acadian, but this action was not appealed by Acadian. Acadian does not figure in this appeal.
In the meantime the landfill had begun operations, and several landowners in the area (referred to as the Gossen and Guilbeau groups) intervened in the suit filed by Acadian seeking damages for loss of value and nuisance and seeking to enjoin further operation of the landfill. However, Acadian's principal suit and the interventions were tried separately and came up on appeal separately. After trial between the landowners and the City, on September 10, 1981, the district court issued the injunction before us in this appeal. Thus, in this appeal the intervenors, the Gossen and Guilbeau groups, are the appellees. It has recently become apparent that the City obtained an order of appeal, timely signed by the trial judge, granting an appeal and setting bond. The trial court refused to stay the injunction and, on application for writs to this Court, the City was granted a stay of the injunction during the pendency of the appeal. The original order of appeal was not filed with the parish clerk of court at this time, but a revision of the order dated September 23, 1981 deleting the bond requirement was filed and sent to this court on September 24. This revision does not refer to a particular judgment or original order of appeal, but it is now apparent that the only appealable judgment in the record at that time was that of September 10, 1981. The writ granting a stay of the injunction was issued on September 30, 1981. (Our Docket Number # 8659.)[1]
*19 A judgment awarding money damages to the intervening landowners was filed on October 27, 1982, from which the City appealed. That judgment was affirmed by this Court in an opinion at 434 So.2d 182, writ denied 440 So.2d 733 (Acadian # 2). In that appeal both the City and the landowners argued the merits of the injunction, but we found that the record before us at that time contained only an order of appeal from the October 27, 1982 judgment. Thus we did not consider the injunction. In its application for rehearing in that matter, the City asserted only that our writ action on September 30, 1981 granted an appeal from that judgment. The rehearing was denied on July 14, 1983.
During the appeal proceedings on Acadian # 2, trial was held between the original plaintiff, Acadian, and the City resulting in a judgment for money damages in favor of Acadian on January 28, 1983. Our decision affirming that judgment was rendered on February 1, 1984. (Acadian # 3). Acadian Heritage Realty v. City of Lafayette, 446 So.2d 375 (La.App. 3rd Cir.1984). In that appeal, the City again attempted to bring the issues regarding the injunction before this Court and we pointed out that Acadian, the appellee in Acadian # 3, was not involved in the injunction and was not the plaintiff in whose favor the injunction was given. Thus, the City could not argue the injunction in its appeal against Acadian.
During the latter part of July, 1983, the clerk of this Court received a communication from the Lafayette Clerk of Court forwarding an order of appeal from the injunction judgment of September 10, 1981, requesting that the order be inserted into the record of Acadian # 3, at page 462A, et seq. This order of appeal was stamped as having been filed on July 26, 1983, with the Clerk of Court for Lafayette Parish, and, although it was signed by the trial judge, the date of the signing was not given. The order does contain a return date of October 12, 1981, evidently inserted in the appropriate blank by the trial judge.
During oral argument of Acadian # 3 the City's attorney, when advised that the injunction matter was not on appeal in that particular appeal, indicated the City's desire to have it docketed, heard and disposed of. Accordingly, a separate appeal was docketed and is the appeal now before us. (Acadian # 4.) When notice of the appeal was given to the intervening landowners, they filed a motion to dismiss the appeal as being untimely.

MOTION TO DISMISS
In support of the motion to dismiss the appeal as having been untimely filed, movers argue that the late filing of the order of appeal is an error attributable solely to the City. In fact, at oral argument on this matter, the City's attorney admitted that the unfiled order of appeal was finally located in his office files, and he then immediately filed it with the Lafayette Parish Clerk of Court on July 26, 1983. Counsel stated that the usual procedure in Lafayette Parish was for the judge to sign an order of appeal, and someone from the judge's office would file it with the Clerk of Court. Counsel for the City speculated that the original order was apparently sent back to his law office and was inadvertently placed in his file under the erroneous impression that it was an information copy. We have no doubt that the search for the order was extremely tedious as the final Clerk's record in this matter contained more than 3800 pages. No doubt the file kept by the City's attorney must be even more voluminous.
Although the original order of appeal did not appear in the record until July 26, 1983, the revision of that order and the writ granting a stay of execution of the injunction did appear in the record and gave timely notice to the parties of a pending appeal. The two documents do not grant an appeal as argued by the City, but they do make it apparent that an appeal was intended. Even this Court was clearly under the impression that an appeal existed when the writ was granted. In Acadian # 2, all parties argued the merits of the injunction in their briefs as if it were being considered on appeal.
*20 Movers argue that this situation should be controlled by Traigle v. Gulf Coast Aluminum Corporation, 399 So.2d 183 (La. 1981). In that matter the Louisiana Supreme Court dealt with a series of cases in which the orders of appeal were timely filed with the parish clerks of court, but were not signed prior to the expiration of the delays. The Supreme Court concluded that when an order of appeal is timely filed with the clerk of court, the clerk has a duty to either obtain the judge's signature on it or, in cases where allowed by law, sign it himself. Thus, the Court held that the appeals were valid because they were timely filed.
According to movers, the Court in Traigle ruled that only the timely filing of the order of appeal could validly effect an appeal and the signing of an order of appeal within the time limit did not. We disagree. The cases relied on by the City, Owens v. AAA Contracting Company, 213 So.2d 338 (La.App. 1st Cir.1968) and Martin v. Martin, 228 So.2d 355 (La.App. 4th Cir.1969), represent the long-standing rule that as long as the order of appeal is timely obtained (i.e., signed), it cannot be invalidated by the failure to timely file it as long as it is eventually filed in the record. We do not believe that the Supreme Court in Traigle intended to overrule prior holdings recognizing the validity of appeals. Rather we believe the Court was merely recognizing the principle that appeals are favored in the law and should not be dismissed for a mere technicality. Further, an appeal should be maintained unless the ground urged for dismissal is free from doubt. See Jeanmard v. Sears, Roebuck and Company, 436 So.2d 575 (La.App. 3rd Cir. 1983).
In the present case, although it is clear that the order of appeal was not timely filed, it is not entirely clear what caused the late filing. The City's attorney contends he followed normal procedure in leaving the order at the judge's office to be signed. We decline to hold that the reliance on the usual custom in this case constitutes fault imputable to the appellant. See Thompson v. Warmack, 229 So.2d 352 (La.App. 3rd Cir.1969). Both parties and even this Court at one point believed that there was a valid appeal.
Finally, movers urge that under LSA-C. C.P. arts. 561 and 2165 as each provided prior to amendment by Act 186 of 1982, the appeal should be declared abandoned for failure to prosecute for one year. We disagree. Aside from the fact that both parties believed the injunction to be before this Court on appeal, there was also some confusion in this Court concerning which matters in this case were to be consolidated. At one point a peripheral matter was consolidated with Acadian # 2. See 434 So.2d 180 (La.App. 3rd Cir.1983). The City's attorney consistently harbored the expectation that the injunction would be heard either in connection with Acadian # 2 or Acadian # 3. Because the entire record was already before this Court in Acadian # 3, and the City's attorney mistakenly assumed the order of appeal relative to the injunction was a part of that record, the appellant had no reason to expect a separate return date or separate notice on the injunction matter. Considering the fractured nature of this litigation, we do not find his expectations unreasonable. On the other hand, this Court of Appeal was not made aware that the injunction had in fact been appealed until a copy of the order of appeal filed July 26, 1983 was forwarded to us sometime thereafter by the Clerk of Court for Lafayette Parish. As noted above, this was while the appeal in Acadian # 3 was pending before us.
After fully considering all of the above matters, and with particular notice of the continual and unusual confusion in this matter, we conclude that the motion to dismiss the appeal should be denied. Accordingly, we deny the motion to dismiss.

MERITS OF THE INJUNCTION

The Conditional Permanent Injunction
In the appeal in this case we consider the merits of a judgment of the trial court which it referred to as a conditional permanent *21 injunction. From the standpoint of mechanics, the trial court first issued an injunction prohibiting and enjoining the City of Lafayette, or anyone acting for it, "from continuing the operation of the N. Dugas Road landfill." The trial court judgment then provided: "This conditional permanent injunction is suspended contingent upon the following:" At this point the judgment lists numerous conditions to be met which extend over three and a half legal size pages of double space typing. The City was given two weeks to meet the conditions. After the conditions are concluded a final paragraph provides:
"2. Upon written notice or motion to this Court that any violation(s) has occurred, a hearing will be held to determine whether or not the complaint is well taken and that the suspension of the conditional permanent injunction should be dissolved."
The judgment described above was signed on September 10, 1981 and is reproduced at the end of this opinion in full as Appendix I.

The Stay Order from this Court
As recounted above, the City appealed from the injunctive order. The injunctive order was first given verbally on September 1 or 3, 1981. This Court of Appeal granted a stay order in the proceedings on September 3, 1981 and on September 30, 1981 we extended the stay order to stay the trial court judgment (the conditional permanent injunction) during the pendency of the City's devolutive appeal. Therefore, our stay order is still in effect. Although the trial court injunctive order is still in effect it is in abeyance by reason of our stay order.

Issues on Appeal
In the brief on behalf of the City of Lafayette, numerous points are raised in support of the City's assignment of error in which it contends that the trial court erred in the issuance of the "conditional permanent injunction." Separate counsel for the Gossen group and Guilbeaux group filed briefs in support of the injunction. It might well be that this injunction matter could be disposed of on a consideration of the various issues raised by the parties. However, we prefer to base our opinion on broader grounds which we feel are more appropriate under the circumstances.
In this connection we are mindful of our pronouncement in Louisiana Livestock Sanitary Board v. Prather, 301 So.2d 688 (La.App. 3rd Cir.1974) which we recently reiterated in Daiquiri Factory, Ltd. v. City of Lafayette, 429 So.2d 523 (La.App. 3rd Cir.1983), writ denied 435 So.2d 441 (La.1983). That pronouncement was:
"The purpose of an injunction is not to afford a remedy for what has happened in the past, but to prevent the occurrence of acts in the future which are unlawful or injurious. The applicant for an injunction is not entitled to that type of relief unless he shows that there is a reasonable probability that the acts sought to be enjoined will occur. It is not sufficient for plaintiff to simply show that the unlawful act has been committed once by the defendant, and that plaintiff fears that it will be committed again. Simon v. Southwest Louisiana Electric Mem. Corp., 267 So.2d 757 (La.App. 3 Cir.1972); Greenberg v. DeSalvo, 254 La. 1019, 229 So.2d 83 (1969)."

Basis for Dissolving Conditional Permanent Injunction
Regardless of all other considerations and technical arguments, we are inclined to view the issues from a broader perspective. At the time the trial court issued the conditional permanent injunction in written form, September 10, 1981, the case was still to be heard on its merits. The judgment in the case on its merits (affirmed by us) in which damages were awarded became final when writs were denied by the Louisiana Supreme Court on October 17, 1983. (440 So.2d 733). There is nothing before us at this time to indicate what has been the operational history of the landfill since the plaintiffs' concern first arose.
*22 In reasons for judgment in which the trial court stated the conditional permanent injunction would be granted, and in the injunction judgment itself, the trial court drew heavily on the requirements for operation of the landfill laid down in the interim permit granted by the state agency, Department of Natural Resources, on June 25, 1981. The City of Lafayette suggests to us now that a permanent permit has now been issued, and the City is operating the landfill under that permit.
It occurs to us that the very detail dealt with by the trial judge in the injunctive order in question suggests that supervision of such an activity by judicial bodies are inordinately time consuming, is beyond the ordinary expertise of judges and is inappropriate for long-time supervision by judges. We are of the opinion that the conditional injunction in question no longer serves any valid purpose. Obviously, such an activity can be more appropriately regulated and monitored by an administrative agency designed and staffed to deal with such operations as landfills.
This is not to suggest that in exceptional situations of an overriding nature issuance of a qualified injunction by a court of law may not be in order. This was done by our Supreme Court in Salter v. B.W.S. Corporation, Inc., 290 So.2d 821 (La.1974). In that case the need for immediate action was manifest. In the case before us no insupportable consequences will result if the landfill is properly operated. This is clear from our opinion on the merits. 434 So.2d 182. We affirmed damage awards to plaintiffs on the basis of what had been done in the past and up to the time of trial. Much of the award was based on lowered property values resulting from mere location of the landfill.
In Robichaux v. Huppenbauer, 258 La. 139, 245 So.2d 385 (1971), the trial court permanently enjoined the defendant from operating a stable or keeping horses on premises in the French Quarter of the City of New Orleans. The Court of Appeal affirmed. The Supreme Court ameliorated the injunction to permit continued operation of the stable under "mandates, restrictions, and injunctions" which it laid down in its opinion. These conditions included positive instructions to take described affirmative measures. The action taken by the trial court here with reference to the landfill belonging to the City of Lafayette in this case is not far different from what the Supreme Court did in Robichaux v. Huppenbauer. However, there are several points of qualitative difference. In the first place, there was no suggestion that the trial court in Robichaux reserved permanent supervision of the horse stable. However, the right was reserved to plaintiffs to renew their complaints if defendant failed to abate the nuisance aspect of his stable. In the second place, the situation in Robichaux v. Huppenbauer was not so complex or technical that it would constitute a burden for the trial court involved to deal with, even in the future if need be. Finally, there is no indication that there was an appropriate administrative agency in the City of New Orleans regulating horse stables and exercising supervision over their operation.
In view of the considerations discussed above, and considering the appropriate roles of the judiciary and administrative and regulatory bodies, we are inclined to believe there is no longer any need for a continuation of the permanent conditional injunction issued on September 10, 1981, if indeed it was necessary at the time it was issued. Therefore, we will reverse the trial court and dissolve the injunction in question.
During oral argument counsel for plaintiff-appellees referred us to the case of McCastle v. Rollins Environmental, etc., 415 So.2d 515 (La.App. 1st Cir.1982), writ denied, 420 So.2d 449 (La.1982). The Court of Appeal for the First Circuit held in that case that injunctive relief to halt a nuisance under LSA-C.C. art. 667 (offensive chemical fumes and odors) was not precluded or pre-empted by the fact that the Legislature had enacted statutory regulations in the field and the fact that a state agency, Environmental Control Commission (ECC), had *23 been created to regulate the field. Without commenting on this holding, we take the position that our action does not run counter to the First Circuit's holding. We base our action on policy considerations. Our decision today comes approximately two and one-half years after the conditional permanent injunction granted by the trial court. Thereafter, the trial court awarded plaintiff-appellees damages, we affirmed, and the Supreme Court denied writs. It is time that supervision and regulation of the landfill in question be taken out of the courts and be handled by the appropriate state administrative agency. We do not hold that the courts may not act or intervene at any time where the circumstances warrant it. Salter v. B.W.S. Corporation, Inc., supra.
Although our reversal will embrace all matters ordered, prohibited or prescribed as conditions of the trial court's suspension of its injunction from continuing operation of the landfill, we deem that one condition requires specific consideration. Conditions numbered 11 and 16 laid down by the trial court provided:
"11) The operators of the landfill shall oversee the dumping and stacking of garbage, and they are to prevent the disposal of waste any higher than five (5') feet above the ground.
* * * * * *
"16) The operators of the landfill shall dismantle the thirty (30') foot wall of waste and bring it down to comply with the five (5') foot height listed above.
In its reasons for judgment the trial court refers to the representations in an earlier injunction hearing in which the City representatives stated that garbage at the landfill would extend ten feet below ground level and five feet above it. At the time of the hearing on the injunction which was granted the trial court found as a fact that garbage might extend as high as 30 to 35 feet above ground. The trial court derisively characterized the ultimate result as "something like Mount Everest."
Regardless of what the City may have represented, we find no evidence justifying the trial court's order, as a condition of suspending the injunction to close the landfill, requiring that the City "dismantle" Mount Everest. The order can only be based on esthetic considerations. Counsel for the Gossen Group argued as follows in his brief on appeal:
"The trial judge heard the testimony of the various witnesses and personally viewed the solid waste disposal site and concluded that the thirty (30') foot wall of waste should be dismantled and brought down to five feet above ground level.
"Furthermore, Mr. Bentley MacKay, Jr., appellant's expert witness had testifed that the thirty-foot mound of garbage could take as much as thirty years to settle and there could be danger of explosion from the collection to methane gas if proper measures are not exercised.
"The trial court, after having viewed the thirty foot mound, recognized that a thirty foot hill of garbage rising from the flat countryside sticks out like a `sore thumb', and a lowering to a height of five feet above the ground would lessen the blight on the countryside.
"Appellant argues that a party has a right to construct a hill on his property. We agree. Had the City constructed a hill on the property for, let's say, park and recreational purposes, there would have been no litigation.
"A thirty foot pile of garbage and dirt is unsightly and the potential of a methane gas explosion creates a hazardous condition and cannot be construed as the type of inconvenience contemplated by Civil Code Article 668."
Counsel's argument shows on its face that its thrust is on the esthetic appearance, a point which we will not contest. The reference to the danger of collection and possible explosion of methane gas is followed by the words "if proper measures are not exercised." The trial court may not limit the height of the waste pile based upon its personal sensibilities and aesthetic *24 sense even if it coincides with the residents and property owners of the area. The exercise of proper measures to meet the danger of methane gas is another matter. In any event, any measure to deal with such gas and the proper measures to be taken are not sufficiently covered in the record in this case to justify the order to dismantle the waste pile.
We conclude that the trial court abused its discretion in issuing the order to limit the height of the waste pile to five feet above ground level. In previous opinions in this litigation reference has been made to the balancing of interests between a land user and his neighbors. Numerous cases could be cited of instances in which landowners and occupiers have been denied relief and have been required to tolerate operations considered by the claimants as inordinately offensive. In our opinion the landfill as an object of height, not in itself dangerous or productive of nuisance other than unsightliness, is an "inconvenience" of the type referred to in LSA-C.C. art. 668. Article 668 provides:
"Although one be not at liberty to make any work by which his neighbor's buildings may be damaged, yet every one has the liberty of doing on his own ground whatsoever he pleases, although it should occasion some inconvenience to his neighbor.
"Thus he who is not subject to any servitude originating from a particular agreement in that respect, may raise his house as high as he pleases, although by such elevation he should darken the lights of neighbors's [neighbor's] house, because this act occasions only an inconvenience, but not a real damage."

CONCLUSION
For the reasons given above, the judgment of the trial court granting a conditional permanent injunction in this case, the written and signed judgment being dated September 10, 1981, is reversed;
IT IS ORDERED, ADJUDGED AND DECREED that the demands of the plaintiff-intervenors for injunctive relief be rejected and the conditional permanent injunction issued in written form on September 10, 1981 and any oral injunction granted prior thereto be dissolved.
The costs of all proceedings in this matter, both in the trial court and on appeal, are assessed to the defendant-appellant the City of Lafayette.
REVERSED, INJUNCTION DISSOLVED.
NOTES
[1] The order of appeal actually grants a suspensive appeal. However, this was obviously not intended as the trial court struck out the second paragraph of the injunction appeal order which would have stayed the injunction until completion of the appeal process. Without such a stay from the trial court the appeal could not be suspensive. LSA-C.C.P. art. 3612. Hence, the appeal could only have been devolutive.