566 So.2d 189 (1990)
Felix K. PRAKASAM, M.D., Plaintiff-Appellee,
v.
Jerry A. POPOWSKI, Physicians and Surgeons Hospital, Inc., and Charter Medical Corporation, Defendants-Appellants.
No. 21643-CA.
Court of Appeal of Louisiana, Second Circuit.
August 22, 1990.
Writ Denied November 26, 1990.
*190 Mayer, Smith & Roberts by Paul R. Mayer, Sr., Shreveport, Cook, Yancey, King & Galloway by Herschel E. Richard, Jr., King and Spalding by William E. Hoffman, Jr., Atlanta, Ga., for defendants-appellants.
Bailey, Fayard & Dawson by M.F. Fayard, Jr., Shreveport, for plaintiff-appellee.
Before HALL, MARVIN and HIGHTOWER, JJ.
HIGHTOWER, Judge.
Defendants appeal the granting of a preliminary injunction to plaintiff, a hospital-based anesthesiologist seeking damages and injunctive relief as to interference with his staff or clinical privileges at Physicians and Surgeons Hospital. For the reasons hereinafter stated, we reverse.

FACTS
In 1978, Dr. Felix K. Prakasam, plaintiff, was granted clinical privileges in anesthesiology at Physicians and Surgeons Hospital (P & S), a private institution in Shreveport. That department of the facility was "open staff," meaning that, upon a physician obtaining privileges pursuant to the medical staff bylaws, he would be allowed to practice there in that speciality. Indeed, at different periods during plaintiff's tenure, other anesthesiologists also actively practiced at P & S, a total of three being so engaged at one time.
After plaintiff provided anesthetic services to physicians at the hospital for some eleven years, the administrator of P & S determined that, based on economic, administrative and improvement of patient care reasons, the hospital should enter into an exclusive contract for the delivery of anesthesia and related services. Such an agreement would permit only one selected anesthesiologist, and other doctors and personnel working through him, to perform anesthetic procedures at the facility, except upon the contractor's approval following the request of an attending physician. In exchange, the contracting anesthesiologist would not practice at any other facility. Exclusive contracts having become common for hospital based-physicians, P & S had comparable plans for all similar departments, including pathology.
Subsequent to being advised of the administrator's findings and recommendations, the hospital Board of Trustees passed a resolution, pursuant to its bylaws, setting forth reasons for implementation of an exclusive contract for anesthetic services and the criteria for proceeding with an award. Requests for proposals for providing these services, along with an attached draft agreement, ultimately were forwarded to five or six anesthesiologists, including plaintiff.
Later averring his displeasure with a provision of the suggested contract authorizing termination without cause upon 90 days notice, plaintiff declined to submit a proposal or to negotiate other terms. From the physicians who did respond, Dr. Carolyn Gibson achieved selection as medical director of the anesthesiology department. Upon finalization of the arrangement between Dr. Gibson and P & S, plaintiff received notice by letter that the agreement had the effect of terminating his clinical privileges at the hospital at the end of ten days. This litigation immediately ensued against the administrator, the hospital corporation, and its parent corporation.
The district court granted a temporary restraining order enjoining defendants from interfering in any manner whatsoever with the clinical privileges and medical practice of plaintiff at P & S.[1]
*191 After a rule nisi hearing, a preliminary injunction issued in the form and substance of the previous TRO, and additionally directing that the privileges of plaintiff's certified registered nurse anesthetists (CRNAs), employees of him or his corporation who assisted in his delivery of anesthetic services, be reinstated at the hospital. In granting relief, the court stated plaintiff would suffer irreparable harm without the preliminary injunction but expressed no reasons for that conclusion.

DISCUSSION
LSA-C.C.P. Art. 3601 provides, in pertinent part:
An injunction shall issue in cases where irreparable injury, loss, or damage may otherwise result to the applicant, or in other cases specifically provided by law;
. . .
The writ of injunction, a harsh, drastic, and extraordinary remedy, should only issue in those instances where the moving party is threatened with irreparable loss or injury, and is without an adequate remedy at law. Greenberg v. De Salvo, 254 La. 1019, 229 So.2d 83 (1969), cert. denied, sub nom. Greenberg v. Dunker, 397 U.S. 1075, 90 S.Ct. 1521, 25 L.Ed.2d 809 (1970); State Board of Education v. National Collegiate Athletic Association, 273 So.2d 912 (La.App. 3rd Cir.1973). Irreparable injury has been defined as that damage, injury or loss for which damages cannot be measured by a pecuniary standard or which cannot be adequately compensated in money damages. Johnson v. Lee, 352 So.2d 303 (La.App. 4th Cir.1977); National Pacific Corp. v. American Commonwealth Financial Corp., 348 So.2d 735 (La.App. 1st Cir.1977). To justify a preliminary injunction, the applicant must establish the likelihood of irreparable injury by clear and convincing evidence. Lighthouse Life Ins. Co., Inc. v. Rich, 343 So.2d 444 (La.App. 3rd Cir.1977); State Board of Education, supra.
Plaintiff alleges that defendants' actions, in entering into an exclusive contract for anesthetic services and simultaneously affecting his clinical privileges at the hospital, will cause him to sustain irreparable harm. When asked during testimony to explain the injury to be suffered if the preliminary injunction did not issue, plaintiff cited loss of income and damage to reputation. Indications also arose that some applications for malpractice insurance require disclosure of any previous revocation of privileges by the applicant.
A claim for loss of income, however, does not occasion the availability of injunctive relief. Although such damages may be difficult to calculate, they can be measured by pecuniary standards and compensated in money. Musser v. Mercy Academy, 389 So.2d 76 (La.App. 4th Cir. 1980). An anesthesiologist's recovery of compensatory damages affords him an adequate remedy at law for a breach of contract to provide services to a hospital. Boucvalt v. Board of Commissioners of Hospital Service Dist., 798 F.2d 722 (5th Cir.1986). Furthermore, an injunction generally will not issue to restrain torts such as defamation or harassment since there usually exists an adequate remedy at law, which may be pursued in seeking redress. Greenberg, supra; Hairford v. Perkins, 520 So.2d 1053 (La.App. 3rd Cir.1987). Moreover, testimony reflected that loss of staff privileges at one hospital, caused by an exclusive contract arrangement, would have no effect on a physician's reputation or acceptability for privileges at another hospital.[2] The evidence further fails to establish any effect with respect to insurance, other than as previously stated concerning disclosure.
*192 The trial judge, of course, has broad discretion in determining whether to grant a preliminary injunction, and his decision will be disturbed only where there is clear abuse of that discretion. Lighthouse, supra. After reviewing the record, however, we conclude the trial court so abused its discretion in granting the preliminary injunction in the case at hand, since plaintiff failed to present clear and convincing evidence that he would suffer irreparable harm if the preliminary injunction did not issue.
For these reasons, the judgment of the trial court is reversed, and it is ordered that the preliminary injunction previously issued be cancelled and dissolved. All costs, here and below, are to be borne by plaintiff-appellee.
REVERSED, AND REMANDED FOR FURTHER PROCEEDINGS.
NOTES
[1] Plaintiff also requested a hearing before an ad hoc committee of the medical staff, pursuant to its bylaws, to review the termination of his staff privileges. That committee recommended that his privileges be restored. However, it also recognized the benefit of the exclusive contract with Dr. Gibson, and concluded that plaintiff had to negotiate the future delivery of anesthetic services with her.

The bylaws further provide a procedure for appealing any decision of the ad hoc committee to the governing body, and the delay for such an appeal had not elapsed at the time of the hearing on the rule for preliminary injunction. Testimony indicated that, absent an appeal, the governing body would rule in accordance with the recommendation of the ad hoc committee.
[2] Plaintiff presently has clinical privileges at two other Shreveport area hospitals, owns a pain clinic, and works on the consulting staff at a Minden hospital. At the time P & S entered the exclusive contract, plaintiff was receiving no direct compensation from that facility.