Judgment rendered March 9, 2022.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,156-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

THOMAS BRADFORD TERRAL                    Plaintiff-Appellee

versus

AG RESOURCE HOLDINGS,                     Defendants-Appellants
LLC, AG RESOURCE
MANAGEMENT, LLC AND
AGRIFUND, LLC

* * * * *

Appealed from the
Fifth Judicial District Court for the
Parish of Richland, Louisiana
Trial Court No. 47,839

Honorable Stephen G. Dean, Judge

* * * * *

JONES WALKER LLP                          Counsel for Appellants
By: Michael C. Drew
    Mary M. Spell

STEWART LAW GROUP, LLC
By: Arthur L. Stewart

FISHMAN HAYGOOD, L.L.P.                    Counsel for Appellee
By: Brent B. Barriere
    Jeanette A. Donnelly

THE ELLENDER LAW FIRM
By: Amy C. Ellender

* * * * *

Before ROBINSON, HUNTER, and O'CALLAGHAN (*Pro Tempore*), JJ.

**HUNTER, J.**

Defendants, AG Resource Holdings, LLC, AG Resource Management, LLC, and AgriFund, LLC, appeal a judgment granting a preliminary injunction which prohibits defendants from enforcing noncompetition and choice of law provisions of an employment contract. For the following reasons, we affirm.

**FACTS**

In 2009, the plaintiff, Thomas Bradford Terral, founded AG Resource Management, LLC ("ARM of Louisiana").[1] The primary purpose of the company was to extend farm operating loans to farmers. These types of loans were dependent upon the value of the pending crops, rather than on the farmer's financial history. The plaintiff also sold farming/crop insurance and created proprietary software to assist in evaluating and creating operating capital solutions for farmers.

In 2015, ARM of Louisiana began seeking outside sources of capital to improve its overall financial stability and to support its continued growth. It sold a 70% stake in the company to Virgo-Tigers, LLC ("Virgo"), a private equity investor, for over $18 million. In turn, Virgo restructured ARM of Louisiana and formed AG Resource Holdings, LLC, AG Resource Management, LLC, and Agrifund, LLC. The newly formed entities are domiciled in the state of Delaware. Initially, ARM of Louisiana was the sole member of AG Resource Holdings, LLC, and the plaintiff was the sole

---

[1]ARM of Louisiana is not the same company as the defendant, AG Resource Management, LLC, a Delaware limited liability company.

manager/secretary.  Subsequently, ARM of Louisiana and Virgo became members of AG Resource Holdings and Agrifund.

On September 4, 2015, the plaintiff signed an employment agreement on behalf of himself; he countersigned the agreement as an executive for ARM of Louisiana.  On September 9, 2015, another employment agreement was appended to the original agreement.  The parties disagree with regard to whether the appended document was a part of the original agreement.  The signatures on the appended agreement purportedly belong to the plaintiff, and both agreements contain identical choice of law provisions which state Delaware law would apply to any disputes.  However, the plaintiff has denied signing the document dated September 9, 2015.

The agreements also contained identical noncompetition provisions which prohibit the plaintiff from participating in the "AG space" anywhere in the United States for a period of five years.  More specifically, pursuant to the agreement, the plaintiff was barred from the following acts:

> any activity related to the business of producing or brokering crop insurance, crop hail insurance, or other insurance providing or intending to provide any person or entity indemnity for other financial recompense for or against losses, failures, or casualties of any nature or kind suffered or incurred by any such person or entity in respect of such person or entity's farming or agriculture business or activities, or making loans, advances, credit extensions, or any other financial accommodations to person or entities engaged in farming or agriculture, all marketing, sales, design, and management services and activities related thereto in furtherance thereof, and the franchising of any such business or similar business.

Further, the agreements defined "Competitive Activity" as follows:

> any activity that is in direct competition with the Company or any Related Entity in any part of the States within the United States including, without limitation, any activity related to the business of producing or brokering crop insurance, crop hail insurance, or other insurance providing or intending to provide any person or entity indemnity for other financial recompense

2

for or against losses, failures, or casualties of any nature or kind suffered or incurred by any such person or entity in respect of such person or entity's farming or agriculture business or activities, or making loans, advances, credit extensions, or any other financial accommodations to person or entities engaged in farming or agriculture, all marketing, sales, design, and management services and activities related thereto in furtherance thereof, and the franchising of any such business or similar business.

"Related Entity" was defined as follows:

any subsidiary and any business, corporation, partnership, limited liability company, or other entity designated by Board in which the Company or a subsidiary holds a substantial ownership interest, directly or indirectly including, without limitation, Agrifund, LLC, a Delaware limited liability company ("Agrifund"), together with any of its subsidiaries whether now existing or hereafter formed or arising (and any of their respective successors and assigns).

Pursuant to the 2015 employment agreement, the plaintiff became the Chief Operating Officer of the related entities. His primary duties included designing, developing, and implementing the company's software in an effort to set the company apart as a FinTech (financial technology) service provider within the agricultural arena. During all times pertinent, the plaintiff was a resident of Delhi, Louisiana, and his office was located in Rayville, Louisiana. Additionally, the employment agreement was executed in Louisiana, and the plaintiff performed his duties in the state of Louisiana.[2]

In 2018, the plaintiff relinquished his position as CEO and became Executive Chairman of the Board of Managers. In December 2019, the Board of Managers appointed a new CEO, and in May 2020, it appointed a new Chief Financial Officer.

---

[2] Currently, Virgo owns 51.37% of the enterprise and has the authority to appoint three Board managers; Crop Production Services, Inc., later named Nutrien Ag Solutions, Inc., owns 27.75 % and can appoint one Board manager; and ARM of Louisiana owns 20.88% and may appoint one manager.

Subsequently, according to the plaintiff, he became increasingly concerned about the company's financial losses and expressed his concerns to Virgo's executives. Thereafter, the plaintiff began promoting the company for "outside investment" in an effort to increase equity-holder value. However, defendants maintained the plaintiff was taking "confidential information" from AG Holding and sharing it "with potential competitors." Defendants also assert the plaintiff began making "disparaging comments about [defendants'] managers" to competitors.

On July 16, 2020, defendants notified the plaintiff his contract would not be renewed and defendants planned to investigate the plaintiff's duplicitous conduct. Defendants maintain the plaintiff continued to "shop" his presentations to competitors. On August 16, 2020, defendants placed the plaintiff on administrative leave, and his employment contract expired on September 4, 2020.

On August 26, 2020, the plaintiff filed a "Verified Petition for Declaratory Judgment, Temporary Restraining Order, Preliminary Injunction, Permanent Injunction, and Damages." The plaintiff sought a judgment declaring the choice of law provision of the employment agreement null and void and the noncompetition provision unenforceable. The plaintiff also sought a preliminary and permanent injunction enjoining defendants from enforcing the noncompetition provision of the agreement. The plaintiff contended the noncompetition provision in the agreement did not comply with La. R.S. 23:921 in the following regards: (1) the agreement did not specify the parish or parishes in which the plaintiff was not allowed to compete; (2) the agreement did not define the competitive business with specificity; (3) the noncompete period was not limited to two years; and (4)

4

the party seeking to restrain competition was not doing business in Richland Parish. The plaintiff also argued he did not "expressly ratify" the application of Delaware law. Defendants filed an opposition to the plaintiff's motion for a preliminary injunction, and in the alternative, a motion to stay the proceedings pending the outcome of the litigation in Delaware.[3]

Following a hearing, the district court (1) denied defendants' motion for a stay; (2) declared the Delaware choice of law provision in the employment contract null and void; (3) declared the noncompetition provision is unenforceable under Louisiana law; (4) concluded the plaintiff would be irreparably injured if the noncompetition provision is enforced or if the plaintiff is required to litigate "under Delaware law or the law of any state other than the State of Louisiana"; and (5) entered a preliminary injunction barring defendants from enforcing the terms of the noncompetition provision in the employment agreement.

Defendants appeal.

## DISCUSSION

Defendants contend the district court erred in granting the preliminary injunction. They argue the plaintiff failed to demonstrate irreparable injury, and the plaintiff's contention that he was not required to show irreparable injury is erroneous.

An injunction shall issue in cases where irreparable injury, loss or damage may otherwise result to the applicant, or in other cases specifically provided by law. La. C. C. P. art. 3601. The writ of injunction is an

---

[3] The defendants filed a lawsuit against the plaintiff in the state of Delaware on October 2, 2020, weeks after the instant lawsuit and motion for preliminary injunction were filed.

extraordinary remedy which should only issue in those instances where the moving party is threatened with irreparable loss or injury and is without an adequate remedy at law. *Meredith v. Tram Invs., Inc.*, 48,570 (La. App. 2 Cir. 12/30/13), 130 So. 3d 469; *Brannan v. Talbot*, 29,692 (La. App. 2 Cir. 4/2/97), 691 So. 2d 848. Irreparable harm is defined as injury or loss for which damages cannot be measured by a pecuniary standard or which cannot be adequately compensated in money damages. *Id.*

The trial court has discretion in determining whether or not to issue a preliminary injunction and its ruling will not be disturbed absent an abuse of discretion. *Id.* Generally, an abuse of discretion results from a conclusion reached capriciously or in an arbitrary manner. *Quality Env't Processes, Inc. v. IP Petroleum Co., Inc.*, 2016-0230 (La. App. 1 Cir. 4/12/17), 219 So. 3d 349, 375, *writ denied*, 2017-0915 (La. 10/9/17), 227 So. 3d 833; *Boudreaux v. Bollinger Shipyard*, 2015-1345 (La. App. 4 Cir. 6/22/16), 197 So. 3d 761. The word "arbitrary" implies a disregard of evidence or of the proper weight thereof. *Quality Env't Processes, Inc.*, *supra*; *Burst v. Bd. of Com'rs, Port of New Orleans*, 93-2069 (La. App. 1 Cir. 10/7/94), 646 So. 2d 955, *writ not cons.*, 95-0265 (La. 3/24/95), 651 So. 2d 284. A conclusion is "capricious" when there is no substantial evidence to support it or the conclusion is contrary to substantiated competent evidence. *Id.*

In the instant case, the plaintiff alleged in his petition he would be irreparably harmed if the noncompetition and choice of law provisions are enforced, and the threatened harm to him outweighs any potential harm or inconvenience to defendants. Contrarily, defendants argue the plaintiff failed to meet his burden of proving irreparable injury because he testified he will "continue to serve the AG industry" if the noncompetition provision

is declared invalid. After reviewing the terms of the employment contract and hearing the plaintiff's testimony, the district court specifically concluded the "[p]laintiff will be irreparably injured if the non-competition provision in his employment agreement is enforced or if plaintiff is required to litigate said non-competition provision under Delaware law or the law of any state other than the State of Louisiana."

We have reviewed the record in its entirety. During the hearing, the plaintiff testified he has worked exclusively in the agricultural/financial business for over 20 years, primarily selling crop insurance and extending loans to farmers. The plaintiff expressed his desire to continue to "serve the AG industry . . . by selling loans and crop insurance in the future." Nevertheless, the plaintiff conceded he would be bound by the court's order if the noncompetition clause is deemed enforceable.

The express terms of the noncompetition provision in the employment agreement prohibit the plaintiff from engaging in any competitive activity, including "any activity related to the business of producing or brokering crop insurance . . . or intending to provide any person or entity indemnity for other financial recompense for or against losses[.]" The agreement also barred the plaintiff from "making loans, advances, credit extensions, or any other financial accommodations to person or entities engaged in farming or agriculture." Further, the agreement prohibited the plaintiff from engaging in the competitive activity "in any part of the States within the United States" for a period of five years. In our view, a prohibition such as the one set forth in the agreement would undoubtedly cause the plaintiff to experience an irreparable injury, which encompasses an immeasurable loss of good will and competitive edge in the AG arena. Consequently, we find

the district court did not err in finding the plaintiff would be irreparably injured if the preliminary injunction, prohibiting defendants from enforcing the agreement, is not issued.

Another requirement for obtaining a preliminary injunction is a prima facie showing that the moving party will prevail on the merits. *Meredith*, *supra*; *Holmes v. Peoples State Bank of Many*, 32,749 (La. App. 2 Cir. 3/3/00), 753 So. 2d 1006. La. R.S. 23:921 provides, in pertinent part:

> A. (1) Every contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section, shall be null and void. However, every contract or agreement, or provision thereof, which meets the exceptions as provided in this Section, shall be enforceable.
> (2) The provisions of every employment contract or agreement, or provisions thereof, by which any foreign or domestic employer or any other person or entity includes a choice of forum clause or choice of law clause in an employee's contract of employment or collective bargaining agreement, or attempts to enforce either a choice of forum clause or choice of law clause in any civil or administrative action involving an employee, shall be null and void except where the choice of forum clause or choice of law clause is expressly, knowingly, and voluntarily agreed to and ratified by the employee after the occurrence of the incident which is the subject of the civil or administrative action.
> ***
> C. Any person, including a corporation and the individual shareholders of such corporation, who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment. An independent contractor, whose work is performed pursuant to a written contract, may enter into an agreement to refrain from carrying on or engaging in a business similar to the business of the person with whom the independent contractor has contracted, on the same basis as if the independent contractor were an employee, for a period

not to exceed two years from the date of the last work performed under the written contract.

***

H. Any agreement covered by Subsection B, C, E, F, G, J, K, or L of this Section shall be considered an obligation not to do, and failure to perform may entitle the obligee to recover damages for the loss sustained and the profit of which he has been deprived. In addition, upon proof of the obligor's failure to perform, and without the necessity of proving irreparable injury, a court of competent jurisdiction shall order injunctive relief enforcing the terms of the agreement. Any agreement covered by Subsection J, K, or L of this Section shall be null and void if it is determined that members of the agreement were engaged in ultra vires acts. Nothing in Subsection J, K, or L of this Section shall prohibit the transfer, sale, or purchase of stock or interest in publicly traded entities.

***

L. A limited liability company and the individual members of such limited liability company may agree that such members will refrain from carrying on or engaging in a business similar to that of the limited liability company and from soliciting customers of the limited liability company within a specified parish or parishes, municipality or municipalities, or parts thereof, for as long as the limited liability company carries on a similar business therein, not to exceed a period of two years from the date such member ceases to be a member. A violation of this Subsection shall be enforceable in accordance with Subsection H of this Section.

*Choice of Law Provision*

Under Louisiana law, it is generally acceptable for contracting parties to make a choice of state law that will govern the agreement between them. That choice will be given effect, except to the extent that law contravenes the public policy of the state whose law would otherwise be applicable under La. C.C. art. 3537.[4]  See La. C.C. art. 3540; *O'Hara v. Globus Medical, Inc.*,

---

[4] La. C.C. art. 3537 provides:

Except as otherwise provided in this Title, an issue of conventional obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.

14-1436 (La. App. 1 Cir. 8/12/15), 181 So. 3d 69, *writ denied*, 15-1944 (La. 11/30/15), 182 So. 3d 939.

As noted above, La. R.S. 23:921(A)(2) specifically prohibits forum selection and choice of law clauses in employment contracts "except where the choice of forum clause or choice of law clause is expressly, knowingly, and voluntarily agreed to and ratified by the employee after the occurrence of the incident which is the subject of the civil . . . action."

In the instant case, the plaintiff testified he signed the employment agreement, and he was aware the agreement contained a Delaware choice of law provision. However, he testified he has not, at any time, ratified the application of Delaware law provision. Nothing in this record demonstrates the plaintiff ratified the choice of law provision after the dispute arose as required by La. R.S. 23:921(A)(2). Consequently, we find the district court did not err in concluding the plaintiff made a prima facie showing he will prevail at a trial on the merits with regard to the Delaware choice of law provision contained in the employment contract.

---

Footnote continued

> That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.

*Noncompetition Provision*

Historically, Louisiana has disfavored noncompetition agreements. *SWAT 24 Shreveport Bossier, Inc. v. Bond*, 00-1695 (La. 6/29/01), 808 So. 2d 294; *Heard, McElroy & Vestal, LLC v. Schmidt*, 52,783 (La. App. 2 Cir. 9/25/19), 280 So. 3d 806. This public policy is expressed in La. R.S. 23:921(A)(1), which provides that every contract or agreement by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided by the statute, shall be null and void. The public policy restricting noncompetition agreements is based on the intent to prevent an individual from contractually depriving himself of the ability to earn a living. *Heard, McElroy & Vestal*, *supra*; *Yorsch v. Morel*, 2016-662 (La. App. 5 Cir. 7/26/17), 223 So. 3d 1274. Such contracts are in derogation of the common right to work and must be strictly construed against the party seeking their enforcement. *Heard, McElroy & Vestal*, *supra*; *Innovative Manpower Solutions, LLC v. Ironman Staffing, LLC*, 929 F. Supp. 2d 597 (W.D. La. 2013).

For a noncompetition agreement to be valid under La. R.S. 23:921(L), the scope of the agreement must be confined to an agreement (1) to refrain from carrying on or engaging in a business similar to that of the limited liability company and soliciting its customers (2) within a specified parish or parishes (3) for as long as the limited liability company carries on a similar business therein, not to exceed a period of two years from the date that membership ceases. Thus, the statute limits (1) the scope of the activity from which one agrees to refrain, (2) the geographic area in which one agrees to refrain from that activity, and (3) the time period during which the

11

agreement to refrain from the specified activity may be effective. *Heard, McElroy & Vestal*, *supra*; *Yorsch, supra*.

As stated above, the district court reviewed the terms of the employment contract and determined the noncompetition agreement is unenforceable under La. R.S. 23:921(C). Our review of the noncompetition clause reveals the plaintiff has met his burden of proving he will prevail on the merits at trial. Based upon the overly broad scope and geographic nature of the clause, which prohibits the plaintiff from participating in any activity related to selling crop insurance or extending loans or lines of credit to farmers anywhere in the United States for a period of five years, we find the district court did not abuse its great discretion.

## CONCLUSION

For the foregoing reasons, the district court judgment granting the preliminary injunction barring defendants from enforcing the choice of law and noncompetition provisions set forth in the employment agreement is hereby affirmed. Costs of this appeal are assessed to defendants, AG Resource Holdings, LLC, AG Resource Management, LLC, and AgriFund, LLC.

**AFFIRMED.**