655 So.2d 546 (1995)
Valarie Cheek Ledig BURKE
v.
Conrad LEDIG, Sr.
No. CA 94 2044.
Court of Appeal of Louisiana, First Circuit.
May 5, 1995.
Rehearing Denied June 21, 1995.
Helen M. Edgington, Baton Rouge, for appellant plaintiff Valarie Cheek Ledig Burke.
Clinton Hyatt, Jr., Baton Rouge, for appellee defendant Conrad Ledig, Sr.
Before FOIL, WHIPPLE and KUHN, JJ.
FOIL, Judge.
Plaintiff, Valarie Cheek Ledig Burke, challenges a trial court judgment rendered in favor of defendant, Conrad Ledig, Sr., granting his petition to disavow paternity of two children born during their marriage and dismissing *547 her peremptory exception of prescription. After a review of the record, we affirm.

FACTS
Plaintiff and defendant were married in August, 1981, and during that marriage, two children were born. On May 30, 1990, a judgment of divorce was granted in favor of defendant on the grounds of adultery. In conformity with the parties' stipulation, defendant was ordered to pay $675.00 per month child support to plaintiff. On January 29, 1991, pursuant to a rule to increase child support, the parties stipulated that defendant would pay child support to plaintiff in the amount of $1,000.00 per month.
Thereafter, on May 11, 1993, plaintiff filed another rule to increase child support. On October 14, 1993, while plaintiff's rule was still pending, defendant filed a petition to disavow paternity of the two minor children. He asserted that, under the provisions of 1993 La.Acts No. 32, the first section of which enacted La.R.S. 9:305, he is entitled to said relief because he erroneously believed that he was the father of the children due to misrepresentation, fraud, or deception by plaintiff.
In response, on November 22, 1993, plaintiff filed a peremptory exception of prescription, claiming that the provisions of Act No. 32 of 1993 do not apply to the facts of this case. She denied committing any misrepresentation, fraud or deception which caused defendant to believe that he was the father of the children. Plaintiff urged that the time period for disavowing paternity of the children had prescribed because defendant chose not to seek disavowal, not because of any erroneous belief on his part.
A hearing of the matter took place on February 17 and 18, 1994, after which the trial court took the matter under advisement. The court subsequently rendered judgment in favor of defendant-petitioner.3 In rendering said judgment, the court overruled plaintiff's exception of prescription; decreed that defendant is not the biological or legal father of the two minor children; ordered that the name "Ledig" be removed from the birth certificates of both children; and vacated the previous order of child support. Plaintiff filed the instant devolutive appeal.

LAW AND ANALYSIS
La.Civ.Code art. 184 provides that "[t]he husband of the mother is presumed to be the father of all children born or conceived during the marriage." This presumption may be rebutted if the father timely institutes an action to disavow paternity under La.Civ.Code art. 189, which provides:
A suit for disavowal of paternity must be filed within one hundred eighty days after the husband learned or should have learned of the birth of the child; but, if the husband for reasons beyond his control is not able to file suit timely, then the time for filing suit shall be suspended during the period of such inability.
In applying this provision, courts routinely rejected a husband's allegations that misrepresentations concerning the paternity of a child constituted "reasons beyond his control," causing him to forego instituting a disavowal action. Rather, the 180-day delay period has been zealously enforced. Mills v. Mills, 626 So.2d 1230, 1231 (La.App. 3d Cir. 1993).
During its 1993 regular session, the Louisiana Legislature passed Act No. 32, effective August 15, 1993. Section 1 enacted La.R.S. 9:305, which provides as follows:
Notwithstanding the provisions of Civil Code Art. 189 and for the sole purpose of determining the proper payor in child support cases, if the husband, or legal father who is presumed to be the father of the child, erroneously believed, because of misrepresentation, fraud, or deception by the mother, that he was the father of the child, then the time for filing suit for disavowal of paternity shall be suspended during the period of such erroneous belief or for ten years, whichever ends first.
Section 2 of the Act further declared:
The provisions of this Act shall be applied retrospectively such that a husband or legal father who, because of the mother's misrepresentation, fraud, or deception, erroneously believed he was the father of a child, and whose action for disavowal has *548 prescribed, may institute such an action ancillary to any child support proceeding brought within one hundred eighty days of August 15, 1993, and any such suit not instituted within that time and any claims relating thereto shall be forever barred.
In cases such as this one, where the husband's disavowal action has prescribed, the provisions of Act No. 32 retroactively extend the 180-day period to 180 days after its effective date of August 15, 1993. Further, the disavowal action must be brought ancillary to a child support proceeding.
Here, defendant filed a petition to disavow paternity on October 14, 1993, approximately two months after the effective date of Act No. 32 and well within the time limit. The action was filed while a rule to increase child support was pending before the court and was thus an ancillary action. Accordingly, we need only determine whether the trial court erred in finding that defendant proved he erroneously believed he was the father of the children because of misrepresentation, fraud, or deception by plaintiff.
In its written reasons for judgment, the trial court stated:
Mr. Ledig's testimony appears to be more plausible and more believable than the testimony given by Mrs. Ledig. Therefore, after hearing all of the testimony, considering all of the exhibits, considering the witnesses' testimony and their demeanor, the Court believes that Mr. Ledig thought that he was the father of those children even though he may have had some doubt in his mind at certain times, he believed and wanted to believe that those children were his. He did not conclusively know for an absolute certainty that those children were not his until Mrs. Ledig informed him specifically that he was not the father sometime in the year of 1990.
At that time or shortly thereafter, Mr. Ledig then sought the help of an attorney to disavow those children after he was divorced. At that time his lawyer informed him that it was impossible to bring this action because he had no remedy in law for the relief sought. His saving grace was Act 32 of 1993, passed by the Louisiana Legislature.
It is well settled that a court of appeal may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993). Reasonable evaluations of credibility should not be disturbed on review where conflict exists in the testimony. Id. Moreover, where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Id. at 883.
After reviewing the record in its entirety, we conclude that the trial court was indeed presented with two permissible views of the evidence. Plaintiff and her witnesses testified that defendant always knew that the children were not his but accepted them as his own nevertheless. On the other hand, defendant and his witnesses testified that he was deceived by plaintiff into believing that he was the father of the children. Under Stobart, the court's decision to credit defendant's version of events cannot be manifestly erroneous.
For the above reasons, the judgment of the trial court is affirmed at appellant's cost.
AFFIRMED.
WHIPPLE, J., concurs with reasons assigned.
WHIPPLE, Judge, concurring.
To avail himself of the provisions of LSA-R.S. 9:305, and, in particular, the "retrospective" grace period provided in § 2, defendant was required to establish (1) that his otherwise prescribed action was instituted "ancillary to [a] child support proceeding brought within one hundred eighty days of August 15, 1993" and (2) that he "erroneously believed, because of misrepresentation, fraud, or deception by the mother, that he was the father of the child[ren]." Otherwise, his action for disavowal would be prescribed herein, pursuant to LSA-C.C. art. 189.
As the majority correctly notes, defendant filed his petition approximately two months after the effective date of the Act, and in *549 response and ancillary to plaintiff's rule to increase child support, filed May 11, 1993.
However, the unanswered question is whether the legislatively-sanctioned grace period can be applied constitutionally under the facts presented herein. The record reflects that numerous rules were filed and proceedings conducted with respect to the issues of support and custody of the two children born during the parties' marriage, which proceedings date back to April, 1990.
Indeed, in response to plaintiff's petition for divorce and request for child support as agreed upon by the parties, defendant filed an answer in May, 1990 denying paternity while simultaneously seeking "full joint custody." Eventually, these claims resulted in a judgment thereafter incorporating the stipulated amounts which defendant agreed to pay as child support, and granted defendant "joint physical and legal custody." In March, 1991, another judgment was rendered in response to a rule for increase, in which defendant stipulated to pay $1,000 per month as child support. The petition to disavow came only after plaintiff improvidently sought an increase in child support two years later, on May 11, 1993, shortly before the Act's operative date of August 15, 1993, and the 180 day grace period afforded therein.[1]
As the majority correctly concludes, the provisions of Act 32 clearly operate herein to provide a retroactive extension of the date for filing an otherwise prescribed action for disavowal, despite the traditional and historical treatment of the issue of disavowal as substantive in nature. See Mills v. Mills, 626 So.2d 1230, 1232 n. 1 (La.App. 3rd Cir. 1993). As required in Mills, under traditional rules of statutory interpretation and principles of constitutional law, retroactive application of substantive laws, even when blessed by the Louisiana legislature, is possible only to the extent that it is constitutionally permissible. See LSA-C.C. art. 6 and comments thereto. Indeed, as demonstrated by the record herein, there are compelling social reasons for the strong and historical public policy against the bastardization of innocent children.
Since the constitutionality of the statute is not at issue herein, I concur in the majority's opinion.
NOTES
[1] The rule sought an increase for an alleged increase in medical expenses because of additional expenses incurred for counseling for these children.