691 So.2d 848 (1997)
Leon C. BRANNAN, Plaintiff-Appellee,
v.
Naida J. TALBOT, Defendant-Appellant.
No. 29692-CA.
Court of Appeal of Louisiana, Second Circuit.
April 2, 1997.
Rehearing Denied May 1, 1997.
*849 Mark O. Foster, Minden, for Defendant-Appellant.
T. Clayton Simmons, Charles R. Rowe, Bossier City, for Plaintiff-Appellee.
Before MARVIN, HIGHTOWER and GASKINS, JJ.
MARVIN, Chief Judge.
In this action by Leon Brannan, the exhusband and father, to disavow paternity, the adult daughter, Nadine Brannan, born in 1976, and her mother, now Mrs. Naida J. Talbott, appeal a preliminary injunction barring *850 them from continuing their efforts to collect past due child support. They also complain that the trial court denied their exceptions of prescription, no right of action, no cause of action and res judicata to Brannan's petition.
We affirm the denial of appellants' exceptions and find the temporary restraining order and preliminary injunction wrongly issued, reversing that part of the judgment and remanding for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND
Leon Brannan married Naida on January 3, 1963, producing one child, Nadine, who was born August 8, 1976. The divorce in Bossier Parish on July 18, 1986, ordered Brannan to pay $250 per month in child support. Both parties later married others. Brannan moved to Florida after the divorce. Mrs. Talbott instituted proceedings in Bossier Parish in 1988, seeking to enforce past due child support against Brannan "through the State of Florida."
According to this record and as shown by exhibits attached to the brief of appellants, the Circuit Court of Nassau County, FL, in Case No. 89-94-CA, styled Nadia J. Talbott vs. Leon C. Brannan, entered a judgment against Brannan on April 4, 1989, for the $250 monthly child support, plus $25 a month for the arrearage owed on the 1986 Bossier Parish child support judgment.
On July 28, 1993, in that same styled case and number, the unnamed petitioner (argued here as the State of Florida) instituted further child support proceedings in that Florida court against Brannan, alleging that his arrearage in child support was "$6,000 plus the prior amount of $2,280 for a total of $8,280.00 as of July 14, 1993." That petition prayed to have the court adjudge Brannan in contempt and punish him "accordingly."
On September 20, 1993, Brannan brought his action in Bossier Parish to disavow paternity. On October 25, 1994, appellants filed exceptions of no cause of action, no right of action and res judicata, asserting that Brannan's right to disavow paternity had lapsed pursuant to La.C.C. art. 189 and that the separation and divorce litigation rendered the issue of paternity res judicata. Brannan answered the exceptions on January 24,1995, alleging that, at the time of the divorce, he believed in good faith that Nadine Brannan was his child and the issue of paternity never came up because he "believed in good faith that his wife, Naida J. Talbott, was telling the truth."
The trial court ruled that the ten-year prescription of La.R.S. 9:305 applied, rather than the 180-day period of La.C.C. art. 189, and denied the exceptions. After granting supervisory writs, this court reversed the trial court's ruling, stating:
Plaintiff's action is a separately instituted, ordinary action to disavow paternity and is not ancillary to any child support proceeding. Lastrapes v. Willis, 93-1417 (La.App. 3rd Cir. 4/6/94), 635 So.2d 1281, writ denied. Thus plaintiff's action to disavow does not fall within the narrow exception provided by 1993 Act 32, Section 2. Therefore, the trial court erred in denying the exception of no cause of action.
 Our emphasis
This court, however, further noted:
Although the plaintiff's suit to disavow paternity is a separately instituted ordinary action we note that child support proceedings may be pending against the plaintiff in Florida. If the plaintiff can amend his petition to show that the action to disavow paternity is ancillary to a child support proceeding instituted within 180 days of August 15, 1993, allowing for the suspension of time limits for filing this suit under LSA-R.S. 9:305, then he may do so.
Brannan responded on September 13, 1995, with a first supplemental and amending petition alleging that Mrs. Talbott was guilty of misrepresentation, fraud and deception, concealing the identity of Nadine's natural father and intentionally misleading him. Brannan also alleged that child support proceedings were instituted in Nassau County, Florida on July 28, 1993, within 180 days of the August 15, 1993 effective date of La.R.S. 9:305.
*851 On October 19, 1995, appellants again filed exceptions of prescription, res judicata, no cause of action and no right of action.
On April 15, 1996, without prior notice to appellants or their counsel, Brannan sought and obtained a temporary restraining order prohibiting appellants from "enforcement and prosecution of any and all matters arising from the marriage of Leon C. Brannan and Naida J. Talbott, including, but not limited to, child support enforcement and collection." On May 29, 1996, Appellants filed a motion to dissolve the TRO, seeking damages and attorney fees.
Following a hearing on May 30, 1996, the trial court granted the preliminary injunction and denied appellants' exceptions. Appellants' writ application to this court on June 14, 1996 was converted to this appeal.

DISCUSSION

Appellants' Exceptions
La.C.C. art. 189, unqualified before 1993, provides:
A suit for disavowal of paternity must be filed within one hundred eighty days after the husband learned or should have learned of the birth of the child; but, if the husband for reasons beyond his control is not able to file suit timely, then the time for filing suit shall be suspended during the period of such inability.
Cases had consistently held that the 180-day time limit in which to institute the action en desaveu is a period of peremption (forfeiture) rather than of prescription. The earlier cases likewise pronounced that allegations of a mother's misrepresentations concerning the paternity of a child failed to constitute "reasons beyond [a husband's or legal father's] control." See Pounds v. Schori, 377 So.2d 1195 (La.1979); Redmon v. Redmon, 391 So.2d 916 (La.App.2d Cir.1980); Burke v. Ledig, 94-2044 (La.App. 1st Cir. 5/5/95), 655 So.2d 546, writ denied; Mills v. Mills, 626 So.2d 1230 (La.App. 3d Cir.1993).
During its regular 1993 session, the Louisiana legislature qualified La.C.C. art. 189, by enacting Act No. 32, now La.R.S. 9:305, effective August 15, 1993. This statute provides:
Notwithstanding the provisions of Civil Code Art. 189 and for the sole purpose of determining the proper payor in child support cases, if the husband, or legal father who is presumed to be the father of the child, erroneously believed, because of misrepresentation, fraud, or deception by the mother, that he was the father of the child, then the time for filing suit for disavowal of paternity shall be suspended during the period of such erroneous belief or for ten years, whichever ends first.
Part two of that act provides:
The provisions of this Act shall be applied retrospectively such that a husband or legal father who, because of the mother's misrepresentation, fraud, or deception, erroneously believed he was the father of a child, and whose action for disavowal has prescribed, may institute such an action ancillary to any child support proceeding brought within one hundred eighty days of August 15, 1993, and any such suit not instituted within that time and any claims relating thereto shall be forever barred.

 Our emphasis.
The provisions of the above quoted part two clearly provide a window or extended date that allows the filing of an otherwise prescribed action to disavow. The question is whether Brannan brought his belated disavowal action ancillary to any child support proceeding within 180 days of August 15, 1993. See Burke v. Ledig, supra, the facts in which are hereafter summarized:
Burke and his wife were divorced in 1990. On October 14, 1993, Burke belatedly sought to disavow paternity of two children born of the marriage, while the mother's rule of May 11, 1993, to increase child support, was still pending in the family court. Applying 1993 Act 32, Section 2, the court allowed the father's otherwise prescribed or perempted action to proceed, reasoning that the action was timely brought within 180 days of August 15, 1993, and was ancillary to the mother's child support proceeding.
Here, Brannan filed his petition to disavow paternity on September 20, 1993, within 180 days of August 15, 1993, during the pendency *852 of the proceeding in Florida instituted on July 28, 1993, to have Brannan found in contempt of court for failing to pay child support. The 1993 Louisiana act does not qualify or restrict the child support proceeding to one filed in this state or to one filed by the state at the request of the mother. The Louisiana act simply says that the legal father may institute a belated disavowal action ancillary to any child support proceeding brought within the statutory time frame and any such suit not instituted within that time and any claims relating thereto shall forever be barred.
As in Burke, supra, the contemptchild support proceeding brought by the mother through the State of Florida was filed or brought before August 15, 1993, and the legal father's action to disavow was brought within 180 days of August 15, 1993. As the Burke court impliedly did, we construe the entirety of the statute to mean that an ancillary child support proceeding must have been pending on, rather than brought or instituted within 180 days after August 15, 1993, and the suit to disavow must be brought or instituted within that time [180 days of August 15, 1993]. To construe the act as meaning that the child support proceeding must have been brought within 180 days of August 15,1993, would not give effect to the last conjunctive clause of the act which forever bars any such suit [action for disavowal which has prescribed] not instituted within that [180-day] time.
Part two of the 1993 act is one sentence containing two conjunctive clauses: A legal father who, because of the mother's misrepresentation, erroneously believed he was the father, and whose action has prescribed, may institute such an action brought within 180 days, and any such suit not instituted within that time shall be forever barred. We construe the language of the statute in its entirety and in the ordinary sense as directed by La.R.S. 1:3-9. Part two of the statute clearly grants an opportunity for relief of child support to a husband or legal father who, because of the mother's misrepresentation, erroneously believed he was the father of a child and whose action for disavowal is prescribed or perempted. That relief is conditioned on the legal father's instituting such suit within the 180-day time frame responsive to or ancillary to any child support proceeding against him.
In Bossier Parish proceedings in 1988, the mother, Mrs. Talbott, caused the State of Florida's entry into enforcing the child support obligation of the legal father, then and now a Florida resident. A judgment for past due and future child support was obtained in the Florida court against Brannan in 1989 in proceedings styled Nadia J. Talbott vs. Leon C. Brannan. Proceedings were instituted against Brannan in Florida on July 28, 1993, to enforce that judgment for his continued failure to "comply with the support obligation" of that judgment. Under these circumstances, we shall not hold that the 1993 Florida proceedings were something other than "any child support proceeding" within the meaning of the statute. Brannan's belated disavowal action in Bossier was ancillary or responsive to the motion to enforce past due child support by a motion for contempt which was pending in Florida when the belated disavowal action was filed against Mrs. Talbott and her daughter in Bossier Parish.
Evidence is not admitted on the peremptory exception of no cause of action and need not be admitted on the exception of no right of action which is founded solely on a matter of law. La.C.C.P. art. 931. See Fontana v. Zurich Insurance Company, 430 So.2d 718 (La.App. 2d Cir.1983), writ denied, 438 So.2d 569; Tuttle v. Dept. of Public Safety and Corrections of Louisiana, 579 So.2d 1150 (La.App. 2d Cir.1991); North Central Utilities, Inc. v. East Columbia Water District, 449 So.2d 1186 (La.App. 2d Cir.1984). We find no merit to appellants' assertion of "no evidence." Brannan's disavowal action may proceed on the merits in the trial court.
Although the earlier quoted writ disposition of this court cited Lastrapes v. Willis, supra, we distinguish the circumstances of that case from this case. After our writ disposition, Brannan amended his petition to disavow paternity to assert a cause and a right of action. The record of the Florida proceedings to enforce child support is in the record before us.
*853 The court in Lastrapes held that the presumed father's disavowal action, brought over ten years after the birth of the subject child, was perempted notwithstanding 1993 Act 32, because the disavowal action was a "separately instituted, ordinary action" not ancillary to the State of Louisiana's action for child support brought three years earlier in December 1990 and reduced to judgment. The court held that Section 2 of Act 32 was inapplicable. Here the State of Florida's motion was filed July 28, 1993, and was yet pending when the action to disavow was filed.
This appeal is from the trial court's judgment. That judgment correctly overruled appellants' exceptions of prescription, no right of action, no cause of action and res judicata. Notwithstanding our affirming that part of the judgment, we shall reverse the TRO and injunctive relief granted by the trial court for the following reasons:

Injunctive Relief
Our review of the TRO and preliminary injunction, limited to matters adjudicated by the trial court, has no bearing on the merits of the disavowal action which may proceed to trial on the merits. See Smith v. West Virginia Oil & Gas Co., 373 So.2d 488 (La.1979); O'Neal v. Jackson Parish Police Jury, 27,452 (La.App. 2d Cir. 6/21/95), 658 So.2d 240. The principal demand is determined on its merits only after a full trial under ordinary process. Smith v. West Virginia Oil & Gas Co., supra.

The Temporary Restraining Order
La.C.C.P. art. 3603 governs the issuance of a TRO:
A. A temporary restraining order shall be granted without notice when:
(1) It clearly appears from specific facts shown by a verified petition or by supporting affidavit that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or his attorney can be heard in opposition, and
(2) The applicant's attorney certifies to the court in writing the efforts which have been made to give the notice or the reasons supporting his claim that notice should not be required.
B. The verification or the affidavit may be made by the plaintiff, or by his counsel, or by his agent.
The 1985 comment to La.C.C.P. art. 3603 provides that the second portion of the statute was added to reduce the practice of issuing ex parte restraining orders without notice of any kind. Article 3603 requires a verified petition and supporting affidavits from the plaintiff and other witnesses attesting to the validity of the underlying facts regarding the impending irreparable injury. The 1985 amendment requires the attorney representing the party seeking a TRO to certify that efforts have been made to notify the individual against whom the TRO issues. Lewis v. Adams, 28,496 (La.App. 2d Cir. 8/21/96), 679 So.2d 493.
La.C.C.P. art. 3610 requires the applicant for a TRO or a preliminary injunction to furnish security in an amount fixed by the court, unless dispensed with by law, which shall indemnify the person[s] wrongfully restrained or enjoined for the payment of costs incurred and damages sustained.
Brannan's request for a TRO and preliminary injunction was contained in an unverified pleading styled simply "Motion" without any supporting affidavit. Failing to allege any specific facts whatsoever which indicated possible immediate and irreparable injury, loss or damage, Brannan merely alleged that Nadine's paternity must be decided before enforcement of any child support proceedings.
Brannan incorrectly averred that he was entitled to a TRO based upon La.C.C.P. arts. 531 and 532. Contained in Title II, Chapter Three of the Code of Civil Procedure, entitled "Lis Pendens," these articles provide, in the appropriate situations, for the filing of the declinatory exception of lis pendens and a court's stay of proceedings in a second suit brought in a Louisiana court while another is pending in a court of another state. They do not provide Brannan any grounds justifying injunctive relief in this case.
*854 Moreover, Brannan's counsel failed to provide the certificate regarding advance notice required by La.C.C.P. art. 3603(A)(2). The requirement for the certificate of the attorney was specifically added to the provisions for the TRO in 1985 in an effort to possibly avoid the need for the ex parte employment of judicial power. Lewis v. Adams, supra.
Based upon these circumstances, we find that the TRO was wrongly issued. See La. C.C.P. art. 3608.

The Preliminary Injunction
The applicable article, La.C.C.P. art. 3601, provides, in pertinent part, as follows:
An injunction shall issue in cases where irreparable injury, loss, or damage may otherwise result to the applicant, or in other cases specifically provided by law
...
The writ of injunction, a harsh, drastic, and extraordinary remedy, should only issue in those instances where the moving party is threatened with irreparable loss or injury, and is without an adequate remedy at law. Greenberg v. Burglass, 254 La. 1019, 229 So.2d 83 (1969), cert. denied, sub nom. Greenberg v. Dunker, 397 U.S. 1075, 90 S.Ct. 1521, 25 L.Ed.2d 809 (1970); Prakasam v. Popowski, 566 So.2d 189 (La.App. 2 Cir. 1990), writ denied, 569 So.2d 986.
Irreparable injury is injury or loss for which damages cannot be measured by a pecuniary standard or which cannot be adequately compensated in money damages. Prakasam v. Popowski, supra; Amacker v. Amacker, 146 So.2d 672 (La.App. 1st Cir. 1962); Johnson v. Lee, 352 So.2d 303 (La. App. 4th Cir.1977).
To justify a preliminary injunction, the applicant must establish the likelihood of irreparable injury by clear and convincing evidence. Lighthouse Life Ins. Co., Inc. v. Rich, 343 So.2d 444 (La.App. 3rd Cir.1977); Prakasam v. Popowski, supra.
No showing of substantial harm was made. The enforcement of past due child support is clearly measurable by pecuniary standards. A potential loss that is compensable in monetary damages is inadequate to prove irreparable injury. La.C.C.P. art. 3601; Smith v. West Virginia Oil & Gas Co., supra; Prakasam v. Popowski, supra; O'Neal v. Jackson Parish Police Jury, supra. Brannan has an adequate remedy at law.
The TRO and the preliminary injunction were wrongly issued. In that respect we shall reverse, render and remand.

DECREE
We affirm that portion of the trial court's judgment overruling appellants' exceptions of prescription, no right of action, no cause of action and res judicata. We reverse the trial court's issuance of a temporary restraining order and preliminary injunction, which we find were wrongly issued. We render judgment dissolving the TRO and the injunction at appellee's cost. We remand for further proceedings in all respects. Cost of this appeal are assessed equally to appellants and appellee.
AFFIRMED in part, REVERSED in part, RENDERED and REMANDED.

APPLICATION FOR REHEARING
Before MARVIN, C.J., and HIGHTOWER, GASKINS, CARAWAY and PEATROSS, JJ.
Rehearing denied.