Judgment rendered February 26, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 56,073-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

ETC TIGER PIPELINE, LLC                                    Plaintiff-Appellee

versus

LOUISIANA ENERGY                                          Defendant-Appellant
GATEWAY, LLC

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 645,193

Honorable Michael A. Pitman, Judge

* * * * *

PHELPS DUNBAR, LLP                                   Counsel for Appellant
By: H. Alston Johnson, III
     Brad M. Boudreaux
     Kevin W. Welsh
     Anthony J. Gambino, Jr.
     Nena M. Eddy

NICKELSON LAW FIRM
By: John C. Nickelson

BRADLEY MURCHISON                                   Counsel for Appellee,
KELLY & SHEA, LLC                                   ETC Tiger Pipeline, LLC
By: Kay C. Medlin
     Leland G. Horton
     Joshua S. Chevallier
     Ashley G. Gable

GORDON, ARATA, MONTGOMERY,       Counsel for Amicus
BARNETT, McCOLLAM, DUPLANTIS    Curiae, American
& EAGAN, LLC                                       Petroleum Institute
By: Scott A. O'Connor

GORDON, ARATA, MONTGOMERY,       Counsel for Amicus
BARNETT, McCOLLAM, DUPLANTIS    Curiae, Interstate
& EAGAN, LLC                                       Natural Gas Association
By: C. Peck Hayne, Jr.                          of America
    J. Douglas Rhorer

CARVER, DARDEN, KORETZKY,           Counsel for Amicus
TESSIER, FINN, BLOSSMAN                  Curiae, Louisiana
& AREAUX, LLC                                     Landowners
By: M. Taylor Darden                            Association, Inc.
    Brandon T. Darden

\* \* \* \* \*

Before STEPHENS, MARCOTTE, and ELLENDER, JJ.

**ELLENDER, J.**

Louisiana Energy Gateway LLC (hereinafter, "LEG") appeals a judgment that granted a preliminary injunction in favor of the plaintiff, ETC Tiger Pipeline LLC ("ETC Tiger"), enjoining LEG from utilizing its servitude by entering and building a natural gas pipeline on property subject to a prior, "exclusive" servitude in favor of ETC Tiger. Following this court's reasoning in *ETC Tiger Pipeline LLC v. DT Midstream Inc.*, 55,534 (La. App. 2 Cir. 4/10/24), 384 So. 3d 458, *writ denied*, 24-00763 (La. 10/8/24), 394 So. 3d 271 (hereinafter, "*ETC Tiger*"), we reverse and remand.

## FACTUAL BACKGROUND

In September 2009, ETC Tiger obtained a permanent easement agreement from LEMAC Farms for a 50-foot gas pipeline servitude running basically east-west over an 80-acre tract in southern Caddo Parish. ETC Tiger built and began using its pipeline soon after.

In January 2023, LEG obtained a pipeline servitude and right-of-way agreement, also from LEMAC Farms, for a 50-foot gas pipeline servitude running basically north-south over the same tract. To build this pipeline would obviously require LEG to cross ETC Tiger's existing pipeline.

According to the petition, on May 23, 2023, LEG's parent company contacted ETC Tiger for an assessment and consent to build 42 crossings over ETC Tiger's pipelines, including this one, and wanted an answer within 14 days. When ETC Tiger asked for further information, LEG allegedly responded with "partial, inaccurate, and incomplete" information and further asserted that it could simply "expropriate the proposed crossings." After

some exchange of emails and phone calls, ETC Tiger denied LEG's request; in June 2023, LEG filed a suit for declaratory judgment, in the First JDC, seeking clarification of its rights.[1] Then, in July 2023, a contractor working for LEG made a "Louisiana One Call"[2] stating its intent to cross ETC Tiger's pipeline no later than August 10.

ETC Tiger filed the current suit, in the First JDC, on July 24, 2023, seeking a temporary restraining order, preliminary injunction, and permanent injunction. It alleged the facts outlined above. The district court granted the TRO, with ETC Tiger posting a $100,000 bond. The case came up for a hearing on August 17, 2023. Witnesses for ETC Tiger included Mark Vedral, senior director of land and right-of-way in ETC Tiger's engineering and construction group; Judd Tinkle, encroachment project manager for Energy Transfer LP (ETC Tiger's parent company); and Stephen Futch, vice-president of interstate engineering for Energy Transfer. Testifying for LEG were three employees of The Williams Company (LEG's parent company): Eric Malstrom, project director over LEG programs; Wendy Whitfill-Embry, a land manager; and Curtis Lee West, manager of construction. The parties also offered 38 exhibits.

The district court filed a five-page written opinion on October 10, 2023, granting the preliminary injunction. The court outlined the background facts, the pleadings, and the basic law of injunction, and noted that LEG's 14-day timeline was "unrealistic" and "lacking good faith." Chiefly, the court focused on ETC Tiger's permanent easement agreement,

---

[1] Apparently, this suit is still pending.

[2] Louisiana One Call, also known as "Louisiana 811," is a quasi-governmental clearinghouse for all excavations statewide.

2

particularly Paragraph 4, which referred to an "exclusive" servitude, and found this conferred the right to exclude all other use of the servitude.[3] The court also rejected LEG's contention that Paragraph 4's references to third-party use required ETC Tiger to accommodate LEG's crossing request.

The court rendered judgment granting the preliminary injunction on October 24, 2023. LEG appealed devolutively.

**DISCUSSION**

LEG raises two assignments of error. By its first assignment, it urges the court erred as a matter of law when it concluded that ETC Tiger's "exclusive" servitude allowed it to forbid LEG from constructing a pipeline within LEG's servitude and across the property burdened by ETC Tiger's servitude. This assignment has merit.

In *ETC Tiger*, this court addressed the same argument: whether Paragraph 4's one-time use of the phrase "exclusive permanent easement" entitled ETC Tiger to block crossings that meet all other industry standards for safety. This court rejected that argument, finding instead that Paragraph 4 did not confer a right that extended to the center of the earth.[4] As a result, this court dissolved an injunction that read Paragraph 4 as an "exclusive servitude." In subsequent cases, this court has reaffirmed this interpretation

---

[3] Paragraph 4 is quoted in the prior opinions, but it is reprinted here:

"Although Grantor hereby grants an exclusive permanent easement to the Permanent Easement Property, Grantee agrees to subrogate on a case-by-case basis its exclusive rights hereunder to subsequent grants to others of similar rights for construction, operation and maintenance of pipelines provided that the exercise of such subsequent rights must accommodate the rights herein granted to Grantee. The rights that must be accommodated include, but are not limited to, (a) Grantee's selection of location of pipelines within the Permanent Easement Property; (b) Grantee's occupancy or planned occupancy of any portion of the Permanent Easement Property; and (c) compliance with Grantee's 'work in proximity' rules for encroaching or crossing pipelines and/or facilities."

[4] This opinion was not rendered until April 10, 2024, six months *after* the district court issued its reasons for judgment herein.

of Paragraph 4, dissolving similar injunctions. *ETC Tiger Pipeline LLC v. La. Energy Gateway LLC*, 55,913 (La. App. 2 Cir. 10/2/24), 2024 WL 4365399, *writ denied*, 24-01350 (La. 1/14/25), 2025 WL 87595 (the "NORWELA" case); *Enable Midstream Partners LP v. La. Energy Gateway LLC*, 55,916 (La. App. 2 Cir. 10/2/24), 2024 WL 4366941 (the "Ricks" case).

ETC Tiger contends that this case is "unlike *ETC Tiger*" in that it is "not a pipeline crossing case" but, rather, a test of "LEG's efforts to challenge [Energy Transfer's] servitude rights at 43 separate locations." It argues the injunction is proper because LEG is trying to install a 176-mile high-pressure pipeline "hurriedly and without the usual scrutiny[.]" On close examination, we do not see the alleged distinction. In essence, ETC Tiger is simply relitigating *ETC Tiger*, such as by suggesting it improperly relied on witnesses who testified as to practices in other states, with different parties, and using different contracts with no counterpart of Paragraph 4. Ultimately, however, ETC Tiger concludes that LEG's argument, and *ETC Tiger*'s holding, is "simply wrong."

On the contrary, we see no reason to deviate from our earlier holding in *ETC Tiger*, *NORWELA*, and *Ricks*. LEG's argument has merit. The wording of Paragraph 4 will not support the blanket injunction issued by the district court.

By its second assignment of error, LEG submits the court's legal error in finding an "exclusive" servitude interdicted the factfinding process, thus warranting a de novo review, under *Said v. Federated Rural Elec. Ins. Exch.*, 21-00078 (La. 4/20/21), 313 So. 3d 1241. Alternatively, it submits the court's finding that LEG imposed an unreasonable deadline is plainly wrong.

4

Citing trial exhibits, it shows that emails from ETC Pipeline's parent company, Energy Transfer, asked that all documents pertaining to LEG crossings be sent at one time; LEG advised ETC Tiger that the LEMAC Farms crossing should be prioritized; Energy Transfer's own internal guidelines call for any such review to take place within 30 days; and LEG resubmitted all documents by June 5, 2023.

ETC Tiger responds that the district court found an "absence of LEG's complete dataset," and argues this is sufficient to support the injunction. It cites Futch's testimony that LEG's plans might leave a "swimming pool * * * on either size of our easement" and "holes big enough for cows to fall in." Mostly, it urges the injunction is proper to prevent LEG from taking ETC Tiger's rights "without compensation or expropriation," an injustice the district court "intuitively recognized."

An injunction shall be issued in cases where irreparable injury, loss, or damage may otherwise result to the applicant. La. C.C.P. art. 3601 (A); *Dauphine v. Carencro High Sch.*, 02-2005 (La. 4/21/03), 843 So. 2d 1096, 176 Ed. L. Rep. 490; *Terral v. AG Res. Holdings LLC*, 54,156 (La. App. 2 Cir. 3/9/22), 335 So. 3d 1009. An injunction should issue only in those instances where the applicant is threatened with irreparable loss or injury, and is without adequate remedy at law. *Terral v. AG Res. Holdings*, *supra*; *Brannan v. Talbot*, 29,692 (La. App. 2 Cir. 4/2/97), 691 So. 2d 848, *writ denied*, 97-1419 (La. 9/19/97), 701 So. 2d 172. Irreparable injury is injury or loss for which damages cannot be measured by a pecuniary standard or adequately compensated in money damages. *Shaw v. Hingle*, 94-1579 (La. 1/17/95), 648 So. 2d 903; *Terral v. AG Res. Holdings*, *supra*. The burden of proof at a hearing for preliminary injunction is a prima facie showing that

5

the applicant is entitled to relief. *Rand v. City of New Orleans*, 17-0596 (La. 12/6/17), 235 So. 3d 1077; *Tanner v. Succession of Bourland*, 52,918 (La. App. 2 Cir. 11/20/19), 285 So. 3d 104.

On de novo review, we find the evidence insufficient to make a prima facie case of irreparable loss, injury, or damage. ETC Tiger's senior director, Vedral, testified that pipeline crossings are routine and safe; no witness testified that LEG would be unable to accomplish its LEMAC Farms crossings safely. The encroachment project manager, Tinkle, said he was confused because LEG submitted two crossing plans (one for a conventional bore, the other for directional drilling), but he admitted that both satisfied Energy Transfer's crossing guidelines. In short, the record does not support a finding of irreparable loss, injury, or damage to ETC Tiger's existing pipeline.

The vice-president of interstate engineering, Futch, testified the holes that might be left by LEG's operations created a "significant hazard for landowners"; he suggested a cow could fall in. While this could be a source of inconvenience, it did not stop LEMAC Farms from granting a lease to LEG and is obviously "measurable by pecuniary standards." *Brannon v. Talbot*, *supra*.

Admittedly, LEG's request for assessment and consent was rather large, at 42 crossings, but it asked for this particular crossing to be prioritized; Energy Transfer maintained an internal guideline for processing all requests within 30 days and, moreover, asked for all documents to be sent at one time. Even though the request may have been demanding, it was not, on its face, unrealistic or lacking good faith.

6

Finally, ETC Tiger argues that this case is different from *ETC Tiger*, *NORWELA*, and *Ricks* in that this permanent easement agreement conferred the right to install multiple pipelines to its servitude, in addition to the one already constructed and in operation. The contention is that LEG's exercise of its later pipeline servitude might affect ETC Tiger's right to construct future lines. On close review, we find that one of ETC Tiger's witnesses, Futch, the vice-president of interstate engineering, testified that ETC Tiger has not surveyed or designed a second pipeline, has no plans to install a new pipeline alongside the existing one, has not purchased additional rights on adjoining properties, and has not consulted with the Federal Energy Regulatory Commission about the construction of any new line. The potential interference with ETC Tiger's rights appears, at this point, no more than hypothetical and does not approach a prima facie showing of irreparable injury, loss, or damage. This argument lacks merit.

In short, even without the district court's reading of Paragraph 4 as conferring an "exclusive" servitude, the evidence does not support a finding of irreparable loss, injury, or damage. This assignment of error has merit.

## CONCLUSION

For the reasons expressed, the judgment granting a preliminary injunction is reversed and the injunction is dissolved. The case is remanded to the district court for further proceedings. All costs are assessed to the appellee, ETC Tiger Pipeline LLC.

**REVERSED AND REMANDED.**