Judgment rendered October 1, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 56,493-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

ETC TEXAS PIPELINE, LTD                     Plaintiff-Appellant

versus

LOUISIANA ENERGY                            Defendant-Appellee
GATEWAY, LLC

* * * * *

Appealed from the
Forty-Second Judicial District Court for the
Parish of DeSoto, Louisiana
Trial Court No. 84,329

Honorable Nicholas E. Gasper, Judge

* * * * *

| | |
|---|---|
| BRADLEY MURCHISON KELLY & SHEA LLC<br>By: Kay Cowden Medlin<br>　　Leland G. Horton<br>　　Joshua S. Chevallier | Counsel for Appellants, ETC Texas Pipeline, LTD, ET Gathering & Processing, LLC and Gulf Run Transmission, LLC |
| PHELPS DUNBAR, LLP<br>By: H. Alston Johnson, III<br>　　Brad M. Boudreaux<br>　　Kevin W. Welsh<br>　　Anthony J. Gambino, Jr.<br>　　Nena M. Eddy | Counsel for Appellees |
| ETHAN ARBUCKLE | |

* * * * *

Before STONE, THOMPSON, and MARCOTTE, JJ.

**THOMPSON, J.**

Competitors in the energy sector have returned to court to litigate the extent of rights emanating from predial servitudes and rights of use and any restrictions which may exist regarding pipeline crossings of 12 different servitudes. ETC Texas Pipeline, Ltd. ("ETC") is the owner of a dominant servitude in which it operates an underground pipeline. Louisiana Energy Gateway, LLC ("Gateway") is the owner of servient servitude and sought to construct and operate its own underground pipeline beneath the ETC pipeline, which would necessarily encroach within the surface footprint of the ETC servitude at points the two pipelines crossed. ETC argues the Gateway pipeline would encroach in the vertical space of ETC's dominant servitude, and that ETC's permission is required. After a trial on the merits, the trial court held ETC could not prevent Gateway from constructing and operating an underground pipeline beneath ETC's pipeline, relying on recent jurisprudence from this Court. However, as part of its ruling the trial court also granted Gateway a mandatory injunction, preventing ETC from "taking any action that impedes, interferes with, or obstructs the construction, operation, or maintenance" of the servient estate's pipeline. ETC argues in part that the permanent injunction severely hampers and interferes with its ability to maintain its pipeline. We find granting the continuing mandatory injunction to be manifestly erroneous and reverse the trial court's grant of that injunction. However, in all other respects, the trial court's judgment is affirmed.

# FACTS AND PROCEDURAL HISTORY

This matter is one of many that have been filed between the two parties both at the trial court and here. Williams Companies ("Williams") is a natural gas producer that is seeking to transport gas from Caddo Parish to Beauregard Parish using a pipeline constructed by its subsidiary, Louisiana Energy Gateway, LLC ("Gateway"). ETC Texas Pipeline, Ltd. ("ETC") is one of the largest pipeline companies in the country and owns numerous pipelines traversing the state of Louisiana. Gateway sought to construct and operate a pipeline which would cross below the existing ETC pipeline in same vertical space, which ETC had previously constructed and was operating after acquiring its servitude from the property owner.

On August 24, 2023, ETC filed a petition for declaratory judgment seeking a judgment from the trial court stating that Gateway cannot cross the ETC pipelines without ETC's written consent. In response, Gateway sought an injunction to prevent ETC from interfering with the construction of the Gateway pipeline. A trial was held from April 23, 2024 through April 25, 2024, during which several witnesses testified from both parties and many exhibits, including all servitudes at issue, were presented to the court.

Eric Malstrom testified on behalf of Williams that he is a licensed professional engineer who is the project director for the Louisiana Energy Gateway Project. He testified that there would be hundreds of crossings with ETC pipelines throughout Louisiana and that Gateway spent $90 million to acquire the servitudes for the project. He stated that the Army Corps of Engineers had approved the permits for the project and the federal Pipeline and Hazardous Materials Safety Administration has registered the

2

project.  Gateway provided notice to the Louisiana Department of Energy and Natural Resources.  He testified that Gateway prepared crossing drawings to discuss crossings with all other pipeline owners, but ETC would not communicate with it about potential crossings.  Gateway places its pipelines with the intention of running them long term and would not install unnecessary pipeline crossings.  Malstrom testified that he believed ETC did not have legitimate concern for safety or operations but, rather, was attempting to delay or impact a competing project in the area of their existing pipeline.  He admitted that Gateway did not initially reach out to ETC to cross the pipelines, explaining that normally, other pipeline companies do not object to crossings.

Wendy Whitfill-Embry ("Embry") testified that she is a land manager for Williams and explained that it sends a crossing notice to notify other companies that it will be crossing their pipelines.  She testified that when notice went to ETC and it filed a reconventional demand, Gateway provided additional information on the crossings to ETC.  She identified all of the servitudes that Gateway acquired that would require crossing ETC pipelines.  She testified that she examined the ETC servitudes and none granted rights to the center of the Earth.  She admitted that Gateway did not send all of its information on the crossings to ETC, as some of that information is proprietary.  Embry examined the servitudes acquired by Gateway and agreed that they include limitations on excavation near their pipelines, including requiring prior written consent of Gateway.

Stephen Kellogg testified that he is the staff project manager at Gateway and that he obtained permits for the Gateway pipelines.  He

testified that Gateway is significantly behind on their timeline because of the conflict with ETC. Kollin Hurt testified that he is a senior project manager at Gateway and that he is responsible for the 30-inch and 36-inch pipeline components of the Gateway project. He testified the company acquired all permits from the Army Corps of Engineers for the pipeline. He testified that to have the contractor and the equipment on site to build a crossing and then be delayed would cost the company millions of dollars.

Lee West testified that he is the manager of construction at Williams and that pipeline crossings are extremely common industry practice. He testified that he had overseen 150 pipeline crossings and never had this problem. All of the crossings were done safely. He noted that ETC objected to every crossing Gateway had in this matter. The delays for litigation are costly and time consuming. He visited each of the crossing locations and there is nothing at any of the locations that would prevent a safe crossing. He testified that potholing, which is a process in which dirt is removed from around the pipeline to determine the exact location and depth of the pipeline, is the safest way to determine the placement of a crossing pipeline and is the industry standard. He testified that Gateway would perform the crossings in the presence of an ETC representative and to its specifications, as much as possible. He reviewed the crossings at issue in this matter and testified that there is nothing unusual or dangerous in any of the potential crossings.

William Southerland testified that he is Williams' manager of pipeline construction and in charge of the 42-inch pipeline construction in Sabine and DeSoto parishes. He testified he visited all of the proposed crossing sites

4

and found nothing unusual or difficult about those crossings. He also reviewed with the court all of the proposed crossings.

Tye Ragle testified he is the operations director of the Haynesville assets for Williams. He is responsible for employee and operational equipment safety in the Haynesville area and is responsible for 1500-1600 crossings. He manages 900 miles of pipe in his position. He testified as to the safety protections that would be put into place in the Gateway system. He testified that any operators would have to coordinate and work together for safety.

Melvin "Doyle" Sanders testified that he is an independent professional engineer. He was accepted by the court as an expert in pipeline design, construction, and operation. He testified that Williams met or exceeded standard industry practice and complied with regulatory requirements. He testified that Gateway's operations should not impact ETC's ability to operate, maintain, access, replace, or relocate their pipelines. Every crossing drawing complied with ETC's crossing guidelines. He testified that companies normally work together to make crossings safe. On cross-examination, he testified that the crossings could make it more difficult for one party to maintain or install new pipelines, but the industry standard is for the companies to work together to make such maintenance or installation safe for each other.

Tyler Aldridge testified that he is senior right of way representative for ETC. He testified that ETC has never and will never abandon its rights under its servitude agreements. It has not agreed to a pipeline crossing on its servitudes. He testified that when the servitudes say "pipelines" it means

that ETC has negotiated for multiple pipelines within the servitude. On cross-examination, he testified that he is unaware of other litigation involving pipeline crossings and Gateway has safely crossed ETC pipelines before. He was unaware of any time there was a problem with maintenance of a pipeline at a Gateway crossing. He admitted that despite the multiline rights under the servitude, there was no plan to build any additional pipeline at the time of his testimony.

Steve "Michael" Futch testified that he is vice president of interstate engineering and construction, and he oversees pipeline construction and partnership for ETC. He testified that the emails from Gateway stating that they intended to cross included an unexpectedly large number of crossings for ETC to process in a short amount of time. He testified that any time there are crossing pipelines, it makes everything more complicated, including moving pipelines and maintenance. He estimated it would cost up to $5 million to supervise the excavation of the new pipelines.

Judd Tinkle testified that he is the encroachments project manager with ETC, which means he reviews plans for pipelines and relocates pipelines. He testified that there are no fully executed encroachment agreements for any of the disputed crossings, as required under ETC's guidelines. He confirmed that potholing is a safe and common practice in the industry.

Charles Gregg testified that he is the director of technical operations for ETC in North Louisiana, and he assists the operations department with any technical matters that may need support. On cross-examination, he testified that he had never reviewed any documents concerning Gateway's

planned crossings. He testified he was not aware of any plans to replace any of the pipeline on the properties where the crossings were located in this matter.

Mark Vedral testified that he is the senior director of land and right of way for ETC. He is the leader of the group that acquires new rights of way and manages issues that come up in existing rights of way. He testified that he would not be able to respond to a notice of 42 crossings in the time limit set by Gateway. He also testified that he had not examined Gateway's crossing documents.

After the trial concluded, the trial court issued its written reasons for judgment, in which it first stated that it found that ETC would be open to allowing the crossings by Gateway, if Gateway was willing to pay ETC for them. It found that this fact confirmed that there were no issues related to safety or adverse effects by the crossings. It found that ETC provided no proof of concerns about safety or potential adverse effects and made no effort to even evaluate the crossings. The court noted that ETC employees, including Mark Vedral, refused to sign a nondisclosure agreement that would allow them to view all of the relevant Gateway documents. The court found that ETC had not provided a valid argument that the Gateway servitudes and crossing would have any adverse effect on the existing pipelines.

The trial court examined all 12 relevant servitudes to this matter. It noted that only one servitude, the Mitchell Servitude, prohibited activity under the servitude, and that prohibition only applied to construction under the servitude. The other servitudes that prohibit construction only prohibit

7

construction on or over the servitude. The trial court determined that the crossing pipelines would not constitute an obstruction, building, fence, improvement, or other structure under the right of way. The court found there was no evidence that the Gateway pipeline would be an obstruction. There was no evidence that suggested or proved that a crossing would obstruct ETC from being able to use its servitude for its intended purpose. It determined that none of the servitudes probit a pipeline crossing.

The court then determined that the servitudes that prohibit excavation on or over the servitudes do not include the exclusion of potholing but do exclude the open cut method of pipeline installation. The court further found that it would not require Gateway to use expropriation instead of its current course of action and Enable Gas Transmission, LLC did not need to be a necessary party to this suit.

Finally, the trial court granted Gateway's request for a permanent injunction. In its judgment dated September 28, 2024, the trial court ordered that ETC and its related parties are "permanently enjoined from taking an action that impedes, interferes with, or obstructs the construction, operation, or maintenance of" Gateway's pipeline and the exercise of all accessory rights related thereto on the servitudes at issue. This appeal followed.

**DISCUSSION**

This Court has a rich history of recent litigation on this issue of pipeline crossings. Our earlier decisions on the related topics can be found at *ETC Tiger Pipeline, LLC v. DT Midstream, Inc. & DTM Louisiana Gathering, LLC*, 55534 (La. App. 2 Cir. 4/10/24), 384 So. 3d 458, *writ denied*, 24-00763 (La. 10/8/24), 394 So. 3d 271; *Enable Midstream*

8

*Partners, LP v. Louisiana Energy Gateway LLC*, 55,916 (La. App. 2 Cir. 10/2/24), 400 So. 3d 1142, 400 So. 3d 1142, *writ denied*, 2024-01523 (La. 2/25/25), 401 So. 3d 662; *ETC Tiger Pipeline, LLC v. Louisiana Energy Gateway LLC*, 55,913 (La. App. 2 Cir. 10/2/24), 400 So. 3d 1123, *writ denied*, 2024-01350 (La. 1/14/25), 398 So. 3d 1168; and *ETC Tiger Pipeline, LLC v. Louisiana Energy Gateway, LLC*, 56,073 (La. App. 2 Cir. 2/26/25), 56,073 (La. App. 2 Cir. 2/26/25), 408 So. 3d 341. These cases are distinguished from the present matter in that they dealt with the grant of a preliminary injunction by the trial court in favor of ETC, as opposed to the grant a permanent injunction of favor of the pipeline company seeking to cross the existing pipelines.

In our earlier cases on this issue, we held that the servitude granted to the pipeline company was not a predial servitude because it did not involve two estates but, rather, was a right of use. The rules applicable to usufruct and predial servitude are both applicable as long as they are compatible with rules governing the right of use servitude. La. C.C. art. 645. The right of use grants specific rights to use the property, which can limit the landowner's use of the land to the extent specified in the servitude agreement. La. C.C. art. 639. "The right of use may confer only an advantage that may be established by a predial servitude." La. C.C. art. 640. A predial servitude is a charge on a servient estate for the benefit of a dominant estate. La. C.C. art. 646. A right of use includes the rights contemplated or necessary to enjoyment at the time of its creation as well as rights that may later become necessary, provided that a greater burden is not imposed on the property unless otherwise stipulated in the title. La. C.C. art.

9

642. A right of use is regulated by application of the rules governing usufruct and predial servitudes to the extent that their application is compatible with the rules governing a right of use servitude. La. C.C. art. 645.

With this background of law in mind, we will address each of ETC's seven assignments of error below.

**First Assignment of Error: The trial court committed legal error in its interpretation of ETP's Servitudes in failing to rule, as a matter of law, that Gateway cannot construct a pipeline crossing without ETP's consent and agreement.**

ETC argues that its servitudes require, by their terms and Louisiana law, that Gateway must obtain ETC's consent before constructing pipeline crossings at locations where the Gateway servitudes and ETC servitudes are coextensive. ETC argues that its servitudes are the dominant estates in this matter.

Louisiana law provides that the owner of the servient estate may establish thereon additional servitudes, provided they do not affect adversely the rights of the owner of the dominant estate. La. C.C. art. 720. Doubt as to the existence, extent, or manner of exercise of a predial servitude shall be resolved in favor of the servient estate. La. C.C. art. 730. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. C.C. art. 2046. We have held that the word "exclusive" in a servitude agreement does not mean that "servitude includes all depths and can subjectively block the crossing of another pipeline." *DT Midstream, Inc.*, *supra*.

Here, ETC argues that because none of the landowners reserved the right to construct or allow the construction of foreign pipelines over and

across ETC servitudes, the construction of such pipelines cannot be imposed on the ETC servitudes without its consent. Once again, we disagree. The right of use servitude is a limited personal servitude and does not give its holder the exclusive use of the land to which the servitude is subject. *Faulk v. Union Pac. R.R. Co.*, 14-1598 (La. 6/30/15), 172 So. 3d 1034; *Louisiana Energy Gateway LLC v. Trunkline Gas Co., LLC*, 24-544 (La. App. 3 Cir. 4/2/25), 411 So. 3d 825. The landowner retains ownership of the property, and for a right of use servitude to give its holder exclusive use of the land would convert the limited personal servitude to a right more closely resembling ownership. *Id.* Here, there is nothing in the ETC servitudes that would require the landowner to seek the consent of ETC prior to granting additional pipeline servitudes. We have previously held that a servient estate owner can grant additional rights of use as long as the new pipeline servitude holders do not infringe upon the existing servitude, and there is nothing in the ETC servitudes at issue that would require its consent prior to the landowner granting the additional servitudes. This assignment of error is without merit.

The second and fourth assignments of error all include the same analysis, and thus, will be examined together.

**Second Assignment of Error: The trial court committed legal error in finding that it would only need to determine if Gateway had provided ETP with all necessary information to assess the crossings, and, if so, did any safety concerns remain.**

**Fourth Assignment of Error: The judge committed legal error in finding that Gateway's servitudes and crossings do not create any safety concerns or cause any adverse effects.**

ETC asserts that the trial court erred in relying on this Court's opinion in *ETC Tiger*, 384 So. 3d at 458, arguing that this matter is a not a pipeline

11

crossing case, as in *ETC Tiger* but, rather, an attempt by Gateway to "blanket ETC's pipeline system [which] is entirely different and cannot fit within the reciprocal crossing arrangement that pipelines follow." ETC further argued that the trial court erred in finding that there was no proof of safety concerns or potential adverse effects of Gateway's crossing pipelines.

The trial court's findings that Gateway's pipelines crossing ETC's pipelines would have no adverse effect or create safety concerns on ETC's pipelines is a factual finding in a civil matter subject to the manifest error standard of review. *White v. White*, 44,778 (La. App. 2 Cir. 10/28/09), 25 So. 3d 885. ETC's arguments have been addressed by this Court in its prior opinion in *LEMAC*, 408 So. 3d at 341, wherein ETC made almost an identical argument, contending that that case was also "not a pipeline crossing case but, rather, a test of Gateway's efforts to challenge [Energy Transfer's] servitude rights at 43 separate locations." In that case, we found no reason to deviate from our earlier holdings in *DT Midstream*, *supra*, *NORWELA*, *supra*, and *Ricks*, *supra*.

A review of the record in this case reveals that there was sufficient evidence and testimony for the trial court to determine that Gateway's crossing pipelines do not pose a safety threat or have an adverse effect on ETC's pipelines. Accordingly, these assignments of error are without merit.

**Third Assignment of Error: The judge improperly allowed a mandatory injunction by misapplying the law on such injunctions, including by not requiring a sufficient showing of irreparable harm, by lowering the burden for Gateway, and by improperly shifting the burden to ETP.**

ETC argues that the trial court erred in granting Gateway a mandatory injunction against ETC on the servitude property. The standard of review for the issuance of a permanent injunction is the manifest error standard.

12

*Mary Moe, LLC v. Louisiana Bd. of Ethics*, 03-2220 (La. 4/14/04), 875 So. 2d 22. The issuance of a permanent injunction takes place only after a trial on the merits in which the burden of proof is a preponderance of the evidence. A preliminary injunction may be issued on merely a *prima facie* showing by the plaintiff that he is entitled to relief. *Id.* An injunction shall be issued in cases where irreparable injury, loss, or damage may otherwise result to the applicant. La. C.C.P. art. 3601 (A); *Dauphine v. Carencro High Sch.*, 02-2005 (La. 4/21/03), 843 So. 2d 1096, 176 Ed. L. Rep. 490; *Terral v. AG Res. Holdings LLC*, 54,156 (La. App. 2 Cir. 3/9/22), 335 So. 3d 1009.

An injunction should issue only in those instances where the applicant is threatened with irreparable loss or injury and is without adequate remedy at law. *Terral v. AG Res. Holdings*, *supra*; *Brannan v. Talbot*, 29,692 (La. App. 2 Cir. 4/2/97), 691 So. 2d 848, *writ denied*, 97-1419 (La. 9/19/97), 701 So. 2d 172. Irreparable injury is injury or loss for which damages cannot be measured by a pecuniary standard or adequately compensated in money damages. *Shaw v. Hingle*, 94-1579 (La. 1/17/95), 648 So. 2d 903; *Terral v. AG Res. Holdings*, *supra*. The burden of proof at a hearing for preliminary injunction is a *prima facie* showing that the applicant is entitled to relief. *Rand v. City of New Orleans*, 17-0596 (La. 12/6/17), 235 So. 3d 1077; *Tanner v. Succession of Bourland*, 52,918 (La. App. 2 Cir. 11/20/19), 285 So. 3d 104.

Unlike our earlier jurisprudence, here, the district court granted a permanent injunction in favor of Gateway after a trial on the merits. In its written reasons, the court ordered that ETC was enjoined "from taking action that impedes, interferes with, or obstructs the construction, operation,

13

or maintenance of [Gateway's] pipeline and the exercise of all accessory rights related thereto." A review of the record in this matter does not indicate that a permanent injunction in favor of Gateway is warranted. There has been no showing of irreparable loss or injury by Gateway, which has admitted that it has already built its crossing pipelines under ETC's pipelines. ETC is undisputably the dominant estate, with Gateway being the servient estate. A permanent injunction in favor of the dominant estate creates an imbalance of power against of the servient estate and subjects ETC to a likely insurmountable obstacle to maintenance of its pipeline. If Gateway felt ETC abused its authority in dealing with them, the permanent injunction and resulting monumental imbalanced shift of authority creates the certainty that ETC would be subjected to the same potential abuse by Gateway. While some may argue turnabout is fair play, two wrongs do not make a right. While it is possible that ETC could take action in the future that infringes upon Gateway's servitude rights, Gateway would have remedies at law. However, the record does not support a finding of irreparable injury by Gateway if it is not granted a mandatory injunction against ETC. For this reason, this assignment of error has merit, and this portion of the district court's judgment is reversed.

**Fifth Assignment of Error: The judge committed legal error in finding that ETP cannot prevent Gateway from potholing its pipelines as an excavation if prohibited by the servitude.**

ETC argues that the trial court incorrectly found that ETC cannot prevent Gateway from potholing its pipelines as an excavation, if prohibited by the servitude. In its ruling, the trial court noted that the Mitchell Servitude is the only servitude at issue that includes *any* prohibited activity

14

under the servitude and even it does not prohibit excavation. The trial court stated that "potholing is a process, commonly occurring through hydro-excavation, in which dirt is removed from around the pipeline to determine the exact location and depth of the of the pipeline. It is a process that is required by Revised Statute 40:1749.16 and is intended to ensure the safety of the public and protect the existing pipeline." La. R.S. 40:1749.16 states:

> In addition to the notification requirements in R.S. 40:1749.13 and 1749.14 and the emergency notification requirements in R.S. 40:1749.15, each person responsible for an excavation or demolition operation shall do the following:
>
> (1) Plan the excavation or demolition to avoid damage to or minimize interference with underground facilities in and near the construction area.
>
> (2) Maintain a safe clearance between the underground utilities or facilities and the cutting edge or point of any power or mechanized equipment, taking into account the known limit of control of the cutting edge or point to avoid damage to utilities or facilities.
>
> (3) Provide support for underground facilities or utilities in and near the construction area, during excavation and back filling operations, as may be reasonably necessary to protect the utility or facility.
>
> (4) Potholing to determine the actual location of such facilities or utilities if an excavation or demolition operation could result in damage to underground utilities or facilities handling electricity, gas, natural gas, oil, petroleum products, or other flammable, toxic, or corrosive fluids or gases. For forestry excavation operations that could result in damage to underground utilities or facilities handling electricity, gas, natural gas, oil, petroleum products, or other flammable, toxic, or corrosive fluids or gases, the forestry excavator and the utility or facility owner or operator shall cooperate to determine the actual location of such facilities or utilities.

ETC argues that the trial court incorrectly applied La. R.S. 40:1749.16 because it had to be retroactively applied due to ETC's servitudes predating its 2023 application. We do not find this argument persuasive. As noted

above, we have consistently ruled that Gateway has a right to build and maintain its crossing pipeline. The record does not reflect any exclusion in the servitudes at issue that could prevent a crossing pipeline company from potholing, a process that the Louisiana legislature has acknowledged is a necessary procedure for safety. This assignment of error does not have merit.

**Sixth Assignment of Error: The judge committed legal error when he issued his ruling, which violates the Louisiana Constitution and sanctions an unconstitutional taking.**

ETC argues that the trial court allowed an unconstitutional taking of its property in violation of the Louisiana constitution. ETC argues that if Gateway wants to cross third-party pipelines without first obtaining the required consent, then it must follow the law on expropriation by establishing public purpose and necessity before a judicial authority as required to expropriate the property rights owned by ETC. ETC contends that a servitude is property that cannot be interfered with without compensation and cites La. Const. art. I, § 4(B)(4) which provides: "Property shall not be taken or damaged by any private entity authorized by law to expropriate, except for a public and necessary purpose and with just compensation paid to the owner; in such proceedings, whether the purpose is public and necessary shall be a judicial question."

The use and extent of a predial servitude is regulated by the title by which it is created. La. C.C. art. 697. As noted above, we have determined that Gateway is not required to obtain consent from ETC prior to crossing its pipelines. As this Court has previously noted, a servitude does not extend to the center of the Earth, unless it explicitly states so. *ETC Tiger*, *supra*.

There is no such language present in the servitudes at issue in this case. The record reflects that Gateway's pipelines cross under the ETC pipelines, and ETC has no right to the property lying under its servitude area. As such, there has been no taking, and this assignment of error is without merit.

**Seventh Assignment of Error: The judge committed legal error in not admitting Mark Schroeder's testimony.**

Finally, ETC argues that the trial court erred by excluding Mark Schroeder as an expert witness. The record reflects that Mark Schroeder is a lawyer licensed to practice law in Louisiana and worked for many years in the energy industry, who intended to testify about Louisiana and federal law regarding takings and expropriation and industry customs. The trial court concluded that Schroeder's testimony was not related to the issues at hand and excluded his testimony.

A ruling on the admissibility of evidence is a question of law and is not subject to the manifest error standard of review. *Dodson v. Master Lube Express, Inc.*, 54,805 (La. App. 2 Cir. 11/16/22), 352 So. 3d 113; *Trascher v. Territo*, 11-2093 (La. 5/8/12), 89 So. 3d 357; *Port City Glass & Paint Inc. v. Brooks*, 52,534 (La. App. 2 Cir. 2/27/19), 266 So. 3d 516. A district court is afforded great discretion concerning the admission of evidence at trial, and its decision to admit or exclude evidence may not be reversed on appeal absent an abuse of that discretion. *Dodson, supra*. On appeal, the court must consider whether the contested ruling was erroneous and whether the error affected a substantial right of the party. La. C.E. art. 103(A). If not, reversal is not warranted. *Dodson, supra*.

We find no abuse of the trial court's discretion in the exclusion of Schroeder's testimony. The record reflects that Schroeder would have

testified about takings and expropriation under the Louisiana Constitution, the powers of the Louisiana Commissioner of Conservation, Title 19 of the Revised Statutes, and federal pipeline regulations. The trial court heard much testimony from employees of both pipeline companies regarding the industry standards and the particularities of the servitudes and pipelines at issue. Arguments regarding the application of particular laws are the province of counsel for the parties and the trial court. Given the discretion afforded trial court on this matter, we cannot sat the exclusion of his testimony was in error. This assignment of error is without merit.

## CONCLUSION

For the foregoing reasons, the trial court's judgment granting the mandatory injunction is reversed, and all other orders in the judgment are affirmed. Costs of this appeal are assessed to the parties equally.

**REVERSED IN PART; AFFIRMED IN PART.**